PRIEST, *Appellant*, v. WHITE, *Administrator, et al.*

1. **Corporation**: ACTION FOR FRAUD AND DECEIT. In an action at law against a corporation for fraud and deceit in making false reports and resorting to fraudulent devices to sell its stock, it is necessary, in order to recover, to show that plaintiff acted upon the faith of such representations.

2. ——— : ——— : CREDITOR. The commission of a fraud upon a corporation by its officers does not give to a creditor an action at law for fraud and deceit.

*Appeal from Moberly Court of Common Pleas.*—HON. G. H. BURCKHARTT, Judge.

AFFIRMED.

*H. S. Priest, W. A. Martin* and *W. J. Hollis* for appellant.

(1) The court erred in sustaining the demurrer to plaintiff's evidence. *Wood v. Dummer*, 3 Mason, 308; *Gratz v. Redd*, 4 B. Mon. 178; *Bank v. St. John*, 25 Ala. 620; *Calhoun v. King*, 5 Ala. 523; *Foreman v. Bigelow*, 7 C. L. J. 430; *Boynton v. Hatch*, 47 N. Y. 225; *Haviland v. Chace*, 39 Barb. 283; *Tallmadge v. Iron Co.*, 4 Barb. 382–387; *Sawyer v. Hoag*, 17 Wall. 610; *Skrainka v. Allen*, 7 Mo. App. 434; s. c., 76 Mo. 384; *Bridge Co. v. McCluney*, 8 Mo. App. 496; *Crawford v. Rohrer*, 9 Am. Corp. Cases, 410; s. c., 59 Md. 599; *Rieve v. Morrison*, 7 Am. Corp. Cases, 415; s. c., 54 Md. 429; *Osgood v. King*, 42 Iowa, 482. (2) The statute of limitations did not apply. The fraud upon one hand did not become complete until the defendants had placed their stock in the hands of innocent purchasers, as paid up stock; while upon the other hand as to the stock which had been issued as paid up stock and which had not been, in fact, paid for they would still be treated as holders. 43 Mo. 452; 50 Mo. 55; 52 Mo. 557. (3) Defendants cannot avail themselves in this suit of the failure of the corporation to comply with the provisions of sections 926 and 957, Revised Statutes, 1879. *Kinealy v. Railroad*, 69 Mo. 658; *Martindale v. Railroad*, 60 Mo. 508.

*Hall & Rogers* for respondents.

(1) Section 940, of Revised Statutes, bars plaintiff's

right of action against Bell. (2) No right of action against respondent, Bell, can exist until the appellant shows that he has been injured, and to show this he must first show that he has resorted to all the means arising under his contract with the Jackson Coal and Mining Company to realize his debt, and that these means have been insufficient. (3) There can be no fraud perpetrated upon one who does not rely upon the fraudulent representations and make an investment or do some act upon the faith of those representations. (4) If the appellant had the right, as a subsequent creditor, to resort to defendant, Bell, for the satisfaction of his debt, instead of going first to the then holders of the capital stock, it could only be upon the grounds, (*a*) that Bell sold and transferred his interest in the company to an insolvent man ; (*b*) or when the company was insolvent ; or (*c*) that the stock was transferred to an innocent purchaser for full value, as and for paid up stock. (5) The stock was not issued as paid up stock by defendant, Bell, or during his connection with the company. (6) Stockholders of a company are liable only for claims on contracts existing at the date of the alleged wrong, and not liable to subsequent creditors. *In re State Ins. Co.*, 14 Fed. Rep. 28 ; *Kenton Furnace Co. v. McAlpin*, 5 *Id*. 743. (7) "Whatever fairly puts a party upon inquiry in such a case is sufficient notice in equity where the means of knowledge is at hand." *Angle v. Ins. Co.*, 2 Otto, 342 and cases. (8) "Unless prohibited by statute, an agreement between the incorporators of the company and the directors, by which the former convey to the company property needed for the purpose of its operations and receive payment therefor in full-paid shares of the stock of the company, is, in the absence of fraud, binding upon the parties, and such stock is full-paid stock. *Phelan v. Hagood*, 5 Dil. 45, and authorities therein cited ; *Erskine v. Peck*, 13 Mo. App. 280 ; Thompson on Liab. of Stockholders, sec. 215 ; *Graham v. Railroad*, 12 Otto, 148.

*Ben. T. Hardin* for respondent, White.

(1) The incorporators paid for their interest in the company as they agreed to do, and creditors who became such long after the arrangement between the original incorporators cannot disturb that arrangement at this late day. *Phelan v. Hazard*, 5 Dil. 45; *Erskine v. Peck*, 13 Mo. App. 280; Thompson Liability of Stockholders, sec. 134; 76 Mo. 384; *Kenton Furnace Co. v. McAlpin*, 5 Fed. Rep. 743; 13 Fed. Rep. 152, 161; 14 Fed. Rep. 28; *Coit v. Gold Amalgamating Co.*, 14 Fed. Rep. 12; *Graham v. Railroad*, 12 Otto, 148. Cases are numerous in which such transactions as that of Hardin and the Jackson Coal and Mining Company have come before the courts, and, in the absence of proof of fraud, have been sustained. 5 Dill. 45 and cases there cited on this point; *Bank v. Traer*, 17 Cent. L. J. 152. (2) The court below did right in sustaining the demurrer to plaintiff's evidence. He showed no evidence of fraud, and fraud will not be presumed. 14 Fed. Rep. 19; *Rumbolds v. Parr*, 51 Mo. 592; *Henderson v. Henderson*, 55 Mo. 555; *Ames v. Gilmore*, 59 Mo. 543. The act of the corporators was legitimate and is not a subject of inquiry now. *Oglesby v. Attrill*, 15 Otto, 605. The plaintiff should show that he was prejudiced by an intended wrongful act before he can recover. *Fusz v. Spaunhorst*, 67 Mo. 264. (3) Benj. Hardin transferred his interest in the mines long before the plaintiff loaned his money. And there is not the least evidence that it was not done honestly and without any intention to defeat any creditor of the company. There were no creditors at that time. *Miller v. Great Republic Ins. Co.*, 50 Mo. 55. The transfer should be shown to have been made to an insolvent and with a view of exonerating himself from a then present liability before plaintiff can maintain his action. *Ib.; Provident Sav. Inst. v.*

*Horton*, 52 Mo. 557. Hardin could have been held liable for the debts of the company contracted while he was a stockholder if the creditors could show that his stock was not paid for. *McClaren v. Franciscus*, 43 Mo. 452 ; particular attention is called to pp. 465, 466, and 468 of the last cited authority; *Childs v. Coffin*, 17 Mass. 64. Appellant had notice of whom he was dealing with. *Angle v. Ins. Co.*, 2 Otto, 342. (4) The demurrer should have been sustained. The company had failed to comply with sections 926, 927 and 957 of Revised Statutes, 1879. The suit was not brought within two years after Hardin ceased to be a stockholder. R. S., 1879, sec. 940 ; 2 Dill. 99.

*John F. Williams*, also, for respondent, White.

The fraud is charged to have been committed in 1874. In 1880 Priest became a creditor. It is a principle of the common law that a fraud could only be avoided by him who had a prior interest in the estate affected by the fraud, and not by him who subsequently to the fraud acquired an interest in the estate. *Upton v. Bassett*, Cro. Eliz. 445, and recognized in 3 Co. 83a ; 20 Johns. [N. Y.] 668 ; *Prosser v. Edmunds*, 1 Y. & C. 481 [Exch. Rep.] ; *Graham v. Railroad*, 12 Otto, 154 ; *Ogden v. Rolla*, 13 Abb. Pr. 300 ; 15 Abb. Pr. 59.

BLACK, J.—This suit is prosecuted against White as administrator of Hardin and against J. B. Bell. The court sustained a demurrer to the evidence and the case is here on error assigned to that ruling.

The petition sets out the indebtedness of the Jackson Coal & Mining Company to the plaintiff as disclosed by his evidence. It then alleges in substance that Bell, Hardin, Murphy and Jackson having each subscribed for twenty-five thousand dollars of stock, conspired together to cheat the corporation of its stock with a view

of converting the same to their own use and for the purpose of procuring money on worthless security ; that having become the officers of the corporation and there being no other stockholder, they had certificates of stock issued to themselves as paid up stock, thereby claiming that the company had sold one hundred thousand dollars of stock for cash at par when nothing had been paid on the stock ; that they sold the stock on the market and appropriated the proceeds to their own use, by reason of which the corporation was insolvent ; that plaintiff gave credit to the corporation upon the belief that it had one hundred thousand dollars invested in property and without notice that the stock had been fraudulently issued ; and that by the said fraudulent acts he was induced to part with his money.

The evidence shows that Bell, Hardin, Murphy and W. B. Jackson were jointly interested in prospecting for coal and to that end had procured leases and sunk shafts. In January, 1874, they agreed to, and thereafter did, associate themselves as a corporation by the name of the Jackson Coal and Mining Company, each subscribing for stock to the amount of twenty-five thousand dollars. These persons were the officers and only stockholders. They turned over to the corporation the property which they jointly owned and which was of the value of twelve thousand dollars, in consideration of which they in August, 1874, made an entry upon the books of the corporation to the effect that the stock should consist of one thousand shares of one hundred dollars each to be issued to the order of themselves, that is to say, two hundred and fifty shares to each. In December, 1877, Bell sold his stock for three or four thousand dollars and gave the purchaser an order therefor. In April, 1878, Hardin sold his stock to R. E. Jackson for forty-five hundred dollars. The evidence rather tends to show, that these assignees were then solvent, and while they took the stock, as paid up stock, still it might well be inferred from the price paid

Priest v. White.

and other circumstances that they knew it had not been paid for at par. At the date of these sales no certificates of stock had been issued.

Before these sales of stock, the corporation issued nine bonds of one thousand dollars each, secured the same by a deed of trust on the then property of the corporation, and sold the same at sixty cents on the dollar to carry on the business. Bell, Murphy and Jackson each took two bonds at that price. After all this and in January, 1880, certificates of stock were issued to the three Jacksons and to Phillips, they then being the owners thereof. Subsequently and in December of that year, the Jacksons, as officers of the corporation, borrowed of the plaintiff three thousand dollars and employed him for one year at a salary of one hundred and twenty-five dollars per month, and to secure the money borrowed and payment for the services to be rendered, gave him a deed of trust upon all the property and franchises of the corporation. As further security the Jacksons gave him fifty-five thousand dollars of the stock; W. B. Jackson for a like purpose gave him two of the bonds before mentioned, and guaranteed the payment of the debt. Before the expiration of the year, for which time the money was loaned, plaintiff concluded his security was inadequate and under the terms of the deed of trust had the property of the corporation sold and became the purchaser at two or three hundred dollars, leaving an unpaid balance of thirty-five hundred dollars; and this is the amount of damages claimed by the petition. The evidence also shows that W. B. Jackson gave the plaintiff full and true information as to all the property owned by the corporation at the time the loan was made. The plaintiff also advised with his brother, who was the attorney of the company.

The plaintiff has not reduced his demand to judgment against the corporation. It is clear the petition does not pursue these defendants as owners of unpaid

stock; nor is this a proceeding in equity by which a creditor of the corporation seeks to follow money or property wrongfully abstracted or withdrawn by officers or stockholders. It is an action at law for fraud and deceit. The fraud and deceit, on the evidence, must consist in the fact that the four incorporators in 1874 paid for their stock, having an aggregate par value of one hundred thousand dollars, with property of the real value of only twelve thousand dollars, together with the fact, that Bell and Hardin sold their shares as paid up stock and gave orders therefor. These incorporators acted upon the mistaken supposition that, as they were the only stockholders, it was immaterial how much stock was issued for the property which they put in. The evidence, however, does not show nor does it tend to show, that the incorporators contrived the scheme with a design to defraud existing creditors, much less subsequent creditors.

Now there are two reasons why the plaintiff cannot succeed in this action. In the first place it must appear that he relied upon the alleged fraudulent representation. Bigelow on Fraud, 87; *Dunn v. White*, 63 Mo. 186. In those cases where managers of a corporation make false reports or resort to fraudulent devices, and thereby induce persons to take stock, and are liable in an action of deceit, it is necessary to show that the plaintiff acted upon the faith of the representations. 2 Add. on Torts [Woods' Ed.] 412. It is clear here that the plaintiff did not rely upon any representation made by the certificates or books that the stock had been paid for at par. He had true information of all the property owned by the corporation and upon that and with that as a security he made the loan.

In the next place, if it be conceded to the plaintiff the most he can claim, and that is, that these incorporators committed a fraud upon the corporation, still this does not give him, as a creditor, an action for fraud and·

deceit. The wrong was a wrong to the corporation, and not directed to any creditor or creditors.

It might affect the credit of the company, but it does not follow that every creditor may sue the incorporators at law. "The wrong committed by the officer of a corporation which affects the stockholders generally, through their interests in the corporation, is not a wrong to them as individuals, but to the corporate entity." Cooley on Torts, 518. So, too, a wrong to the corporation which may and does affect the credit of the company and the creditors generally is not a wrong to them as individuals, and they cannot maintain an action as for a tort. Angell & Ames on Corp. [11 Ed.] secs. 596-7. We do not doubt the principles of law asserted in the many cases cited by appellant. Many of them assert the established doctrine of this court. But the plaintiff is not here asking for equitable relief, nor are the defendants pursued as owners of unpaid stock.

The court properly sustained the demurrer to the evidence and the judgment is affirmed. All concur.

89 617
99 532

89 617
114 640

89 617
148 47

89 617
81a 661