READY et al., Appellants, v. SMITH et al.

Division Two, November 18, 1902.

1. **Fraudulent Conveyance: CREDITOR'S BILL: - NO JUDGMENT: CORPORATION.** It is a general rule that a creditor before putting his demand into judgment has no such claim or lien upon the property of his debtor as will authorize him to complain of any disposition made of the debtor's property. This rule is not affected by the fact that the debtor is a corporation. If no obstacle prevents a judgment in a suit at law by the creditor against the debtor for the amount of the creditor's claim, a creditor's bill to reach the property conveyed or disposed of by the debtor can not be maintained.

2. ————: ————: ————: **EXCEPTION TO RULE.** An exception to the rule is where a creditor of a foreign corporation has pursued and exhausted his remedy in the courts of the State where the corporation has its legal domicile, and discovers in another State those who are indebted to the corporation for unpaid balances on their stock subscriptions. In such case the creditor may proceed against such stockholders in equity in the latter State, but that exception in nowise conflicts with the general rule.

3. ————: ————: **DISSOLUTION OF CORPORATION: PLEADING.** An allegation that a corporation has proved to be a failure and is insolvent, is not an allegation that the company is dissolved. The insolvency of a company and its inability to carry out the purpose of its incorporation do not *ipso facto* work its dissolution.

4. ———: ———: EDUCATIONAL CORPORATION: ACTION OF DIRECTOR AND BOARD: CONCLUSIVENESS: CONCLUSION. An educational corporation placed a mortgage on its real estate and when it defaulted defendant bought the loan and took an assignment thereof to himself, and caused the trustee in the mortgage to sell the land and became the purchaser thereof, and soon afterwards sold less than half of it for $2,100 more than the loan, and thereupon the plaintiffs, as general creditors of the educational company, which is alleged to be insolvent, without putting their claim, which was in the nature of salary warrants, into a judgment, brought suit against defendant, praying that he be compelled to turn over to them the $2,100 and that the remainder of the land be sold and the proceeds applied to the payment of their claims. They allege that defendant was a director of the educational company, but do not aver that he was the sole director, nor do they allege that they had ever made application to the board of directors, or to said directors as trustees of the insolvent company, to require defendant to account to the company for the $2,100 and the other property as equitably belonging to it. *Held*, first, if defendant was the only director the salary warrants issued to plaintiffs were not binding on the company; *second*, if there was a board of directors they could have ratified defendant's action in the sale and purchase, and in the absence of fraud and collusion with him their ratification thereof would be conclusive on the company, and there being no allegation of such fraud, the petition does not state a cause of action; *third*, the bare fact that defendant was one of the directors and joined with others in purchasing the note and afterwards purchased the property at a public sale by the disinterested trustee, would not render his purchase fraudulent; *fourth*, the sale of the property to the defendant (a director or trustee) was made subject to the right of the company within a reasonable time to repudiate it, but if it did not complain its creditors can not do so.

5. Laches: MORTGAGE SALE: PURCHASE BY MORTGAGOR'S DIRECTOR. The purchase at a trustee's sale, after default, by a director of an educational corporation of property which has been mortgaged by it, is voidable by it, only within a reasonable time. And where the land was sold at public sale in March, 1889, and the purchaser sold it to others in May, whereby the equitable rights of others intervened, and all the deeds were put of record, and all the parties resided in the town where the land was situate, it is held that a suit begun in January, 1891, to avoid the sale, was barred by laches.

6. Fraudulent Conveyance: PURCHASE BY MORTGAGOR'S DIRECTOR: WHO MAY MAINTAIN SUIT? The creditors of a corporation can not maintain a suit to set aside a sale of property if the fraud com-

plained of is not that of the company but of one of its directors in buying the company's property at the mortgage sale.

7. ———: ———: ———: EDUCATIONAL CORPORATION: ACTION BY ATTORNEY-GENERAL. An interesting and novel contention made by defendants is that under section 1407, Revised Statutes 1899, only the Attorney-General can bring a suit to compel a director of an insolvent educational corporation to turn over to its creditors the money by him acquired in purchasing the company's note and causing the company's property to be sold under a deed of trust given to secure the note and in becoming the purchaser at the sale and in afterwards selling it at an advance. But that proposition is not decided, because its decision is not necessary for the proper disposition of the case.

Appeal from Pettis Circuit Court.—*Hon. Geo. F. Longan*, Judge.

AFFIRMED.

*Wm. S. Shirk, B. G. Wilkerson* and *G. W. Barnett* for appellants.

(1) The complaint here is, that the corporation being dissolved, the defendant Smith, as president and business manager, has fraudulently converted to his own use property and assets of the dissolved corporation, which under the law he held in trust for the benefit of its creditors; that instead of using said property to pay the creditors he has entered into a fraudulent scheme to place the property beyond the reach of the creditors. (2) The plaintiffs as creditors are the parties injured, and as the petition alleges they are the sole creditors, they are the only ones injured and they, not the corporation, are the proper parties to sue. The suit must be in the name of the real parties interested. Our right to recover the amount due us, and to charge the property of the dissolved corporation with the payment of our debts, can not depend upon the action or non-action of the corporation. The corporation is dissolved. The purposes for which it was formed have been abandoned. The property of the defunct corporation is chargeable with its debts. Its assets constitute

a fund for the discharge of the debts, and the defend-
ant Smith as trustee, president and business manager,
is a "trustee of the corporation with power to settle the
affairs, collect the outstanding debts and pay the out-
standing debts due and owing by such corporation as
far as the assets will enable him; to sue for and recover
the property in his name as such trustee; and as such
trustee is responsible to the creditors of the corporation
to the extent of its property and effects that have come
into his hands." R. S. 1899, sec. 976. (a) Uuder this
statute the defendant Smith as trustee of the dissolved
corporation, not the corporation itself, could sue a
wrong-doer for the wrongful appropriation of the assets
of the corporation, but in the present case he is the
wrong-doer. The allegation is that he has fraudulently
appropriated the assets of the corporation which con-
stituted the fund for the payment of the debts. Of
course he will not sue himself, and the creditor who is
injured and the real and only party interested can sue,
and ask that the property be appropriated to the pay-
ment of his debt. (b) A court of equity will lay hold
of the assets of the corporation for the purpose of pay-
ing its debts. Hill v. Fogg, 41 Mo. 563; Powell v. Rail-
road, 42 Mo. 63. (3) It was not necessary for plain-
tiffs to reduce their claims to judgments before bring-
ing a suit in equity to charge the property with the
payment of their claims. The parties to this suit are
all the creditors of said corporation. The corporation
is dissolved and wholly insolvent. There are no funds
with which to pay the debts except that in the hands
of defendant Smith. It would be useless to attempt
to reduce these claims to a judgment. This is a suit
belonging peculiarly to equity jurisdiction and in such
a case there is no necessity for a judgment. The cor-
poration being dissolved, there is no one to sue, except
the trustees and officers who hold the property as trus-
tees for the benefit of creditors. Sec. 976, R. S. 1899;
White v. Land Co., 49 Mo. App. 466; Woolen Mill Co.
v. Kampe, 38 Mo. App. 234. (a) A suit against the
corporation would be a useless form and the law will

not require an act which would be frivolous. Savings Association v. Kellogg, 52 Mo. 583. (b) The fund sought to be reached is a trust fund held in trust for the benefit of creditors and can only be reached by the aid of a court of equity. Wait on Insolvent Corporations, sec. 41, p. 52; Morawetz on Corporations, sec. 1035; Herman v. Britton, 88 Mo. 555; Eppwright v. Nickerson, 78 Mo. 490; Powell v. Railroad, 42 Mo. 68; Williams v. Jones, 23 Mo. App. 132. (c) Where the property is in the hands of the defendant as a trust fund, as in this case, or where the debtor is dead, absconded, or is a dissolved corporation or is wholly insolvent, the law will not require the plaintiff to reduce his claim to a judgment before proceeding in equity by means of a creditor's bill. Pendleton v. Perkins, 49 Mo. 467; Woolen Mill Co. v. Kampe, supra; Savings Association v. Kellogg, 52 Mo. 583.

*George P. B. Jackson* and *Montgomery & Montgomery* for respondents.

(1) The plaintiff can not maintain this action because the right of action, if any, for the alleged wrongs belonged to the corporation itself, the university company, and a general creditor can not maintain the action. Oil Co. v. Marbury, 91 U. S. 590; Buel v. Buckingham & Co., 16 Iowa 289; Alcott v. Railroad, 27 N. Y. 567; Branch v. Roberts, 50 Barb. 435; Allen v. Curtis, 26 Conn. 460. (2) The petition fails to state any facts showing that the plaintiff suffered any injury by the failure of defendant Smith to communicate to the other trustees of the university company the knowledge he is charged to have had, or, that if he had communicated such knowledge, they could have derived any benefit therefrom. (3) The petition shows that plaintiffs are simple contract creditors, not having reduced their claims to judgment, and they can not maintain this proceeding in equity. Bank v. Packing Co., 138 Mo. 92; Wilkerson v. Goodwin, 71 Mo. App. 396; Grocery Co. v. Clark's Execut'x, 79 Mo. App. 405; Hollins v. Brier-

field Coal & Iron Co., 150 U. S. 371; LaGrange Button Co. v. Bank, 122 Mo. 154. (4) The plaintiffs have lost whatever remedy they may have had for the wrongs complained of by their laches. Kitchen v. Railroad, 69 Mo. 255; Twin-Lick Oil Co. v. Marbury, supra. (5) The plaintiffs can not maintain this action because no fraud is alleged on the part of the corporation, the university company, who is the debtor of the plaintiffs. Parker v. Roberts, 116 Mo. 662; Bump on Fraudulent Conveyances, p. 18; Johnson v. Bennett, 39 Barb. 237; French v. Shotwell, 5 Johns. Ch. 564; 1 White and Tudor's Leading Cases in Equity, pt. I., p. 180; Wait on Fraudulent Conveyances, sec. 403; Garretson v. Kane, 27 N. J. L. 211; Eaton v. Perry, 29 Mo. 96; Priest v. White, 89 Mo. 616; McAlpin v. Switzer, 76 Ind. 78; Min. and Manfg. Co. v. Coosa Furnace Co., 95 Ala. 614; s. c., 10 So. 290; Crocker v. Ballangee, 6 Wis. 645; Railroad v. Railroad, 20 Wis. 192; Gruber v. Baker, 20 Nev. 453; s. c., 23 Pac. 863; Whitney v. Kelly, 94 Cal. 146; s. c., 29 Pac. 624. This rule applies to corporations as well as to individuals. Graham v. Railroad, 102 U. S. 148; Hollins v. Coal and Iron Co., 150 U. S. 384; LaGrange Button Co. v. Bank, 122 Mo. 154; Manfg. Co. v. Shoe Co. 60 Fed. 341; Buel v. Buckingham, 16 Iowa 289; Alcott v. Railroad, 27 N. Y. 567.

GANTT, J.—The sufficiency of the petition in stating a cause of action presents the question for decision in this court.

Upon the trial the defendants objected to the introduction of any evidence under the pleadings for the reason that the petition did not state facts sufficient to constitute a cause of action. The objection was sustained and plaintiffs took a nonsuit with leave to move to set the same aside. They afterwards filed said motion and it was overruled, and exceptions saved, and plaintiffs in due time perfected their appeal.

The petition in substance charges that in 1882 a corporation was organized under the statutes of this State governing manufacturing and business corpora-

tions, with a capital stock of $10,000, the purpose of which was to purchase a tract of land of fifty-four acres lying adjacent to the city of Sedalia, twenty acres of which was to be donated to an educational corporation to be organized, to be used by the last-named corporation to establish and maintain a university; that this latter corporation was organized under the statutes of this State pertaining to benevolent, religious and educational associations, and was called the Sedalia University Company. This company established a school and maintained the same until 1886 when, it proving a failure, the school was abandoned and the land corporation repossessed itself of the twenty acres of land. In the meantime the school or university company had become indebted to its teachers for salaries which were unpaid when this action was begun. The land company had in fact never conveyed the twenty acres to the university company, although it had placed it in possession thereof. During its struggle for existence the university company procured the land company to borrow $5,000 for its use, and for this purpose the land company placed a mortgage on the entire 54 acres to secure the $5,000, borrowed from the Missouri Trust Company. It was mutually agreed that if said university company should fail or neglect to pay two successive installments of said interest on said loan as evidenced by coupons, or should fail to pay the taxes or insurance or fail to pay said $5,000 at the maturity of said note, then said university company waived and forfeited all right to have said twenty acres of land conveyed to it. P. H. Sangree was the trustee named in the deed of trust to secure said loan. The university company defaulted in the payment of said loan and thereupon the defendants, D. H. Smith and others, bought said note of the Missouri Trust Company and took an assignment to themselves. They afterwards caused the trustee to sell and at the sale March 6, 1889, Ira Hinsdale bought in the twenty acres of land for the use and benefit of said Smith, for $6,900.

The bill then charges that said Smith was one of the

directors of said university company; that he was also an employee of the Missouri, Kansas & Texas Railway Company; that said company in 1888 was placed in the hands of two receivers, Cross and Eddy; that Cross and Smith were cousins and intimate friends; that a hospital was needed for said company and it was necessary to procure land and buildings for the same and that said Smith "became and was aware" that all or a part of the twenty acres could be sold to the receivers for that purpose, but that before said receivers could so purchase they would have to apply to the court appointing them for power so to do. "All of which it was his duty under the circumstances to have taken advantage of and made use of for and in behalf of said Sedalia University and its creditors and those interested therein. All of which he failed to do." That after purchasing said lands said Smith and Hinsdale began negotiations for the sale of said twenty acres to said receivers. That the same resulted in a sale to them of seven and five-hundredths acres, with the buildings thereon, for $9,000, on the 17th of May 1889; that thus said Smith realized $2,100 more than he gave for said twenty acres and said Hinsdale still holds the twelve and ninety-five one-hundredths acres of the same not sold to said receivers.

The prayer of the bill is that Smith may be compelled to pay over to plaintiffs the difference, $2,100, with interest thereon, and that the remainder of the land be sold to satisfy plaintiff's judgment.

I.   It will be noted in the outset that plaintiffs are mere general creditors of the Sedalia University Company and have not reduced their claims to a judgment. It is a general rule that a creditor before obtaining judgment has no such claim or lien upon the property of his debtor as will authorize him to complain of the disposition of the debtor's property, for the very good reason that he may never obtain a judgment, and if he does not, he can not be injured by any disposition of the property which the debtor may make. [Humphreys v. Milling Co., 98 Mo. 548; Crim v. Walker, 79 Mo. 335; Fisher v. Tallman, 74 Mo. 39; Mullen v. Hewitt, 103 Mo. 639.]

Nor is this rule affected by the fact that the debtor, as in this case, is a corporation.

In the Atlas National Bank v. Packing Company, 138 Mo. l.c. 94, BURGESS, J., speaking for this court said: "As the plaintiff had no lien upon its property, the packing company has the same right to sell or mortgage its property as a private person; and the same steps necessary to be pursued by a creditor in order to reach property conveyed or disposed of by the latter with the intent to defraud creditors, must be pursued by the creditor against the corporation, and before such creditors can in either case maintain a creditor's bill he must show that he has exhausted all remedy at law, and this the petition in this case does not do."

The doctrine announced in Shickle v. Watts, 94 Mo. 410, and Reyburn v. Mitchell, 106 Mo. 365, and similar cases, that where a creditor of a foreign corporation has pursued and exhausted his remedy in the courts of the legal domicile of the corporation, and discovers, in another State, those who are indebted to the corporation for unpaid balances on their stock subscriptions, he may proceed against such stockholders in equity in the latter State, in nowise conflicts with the general rule already stated. Neither are those cases applicable to a state of facts such as we have in this record.

Here the corporation and the creditors were residents of Pettis county, and the exceptional facts and conditions which form the basis of a proceeding in equity by a creditor without first obtaining a judgment at law are absent from the case. No obstacle existed to prevent a suit at law by plaintiffs against the university company for the amount of their respective salaries.

The contention that the university company was dissolved and that therefore an action at law could not have been maintained against it, we think, is untenable. Nothing appears on the face of the bill to show such a dissolution beyond the allegation that the company had proved to be a failure and was insolvent. It was ruled in Oxley Stave Co. v. Butler county, 121 Mo. 641,

after a careful consideration of the authorities, that the mere insolvency of the company and its inability to carry out the purposes of its incorporation would not *ipso facto* work a dissolution. [Hill v. Fogg, 41 Mo. 563; Bank v. Robidoux, 57 Mo. 446; Hotel Co. v. Sauer, 65 Mo. 279; Buell v. Buckingham & Co., 16 Iowa loc. cit. 296, and cases cited.]

Plaintiffs, then, not being judgment creditors and not having exhausted their legal remedies, are in no condition to question the right of the defendants to purchase the note of the land company, and to purchase the property mortgaged by that company to secure said note.

II. But there is another equally cogent reason why these plaintiffs, who are mere general creditors of the university company, have no standing in a court of equity. While alleging that Smith was one of the directors of said company when he acquired the twenty acres, it nowhere avers that he was the sole director nor that the other directors and the corporation were under his control or influence, nor any reason why the remainder of the directors could not ratify and confirm said sale. On the contrary it quite conclusively appears that there were other directors, and if there were not the warrants which plaintiffs allege were issued to them as evidences of indebtedness by said university company are and were not binding thereon. There is no allegation that plaintiffs made any application to the board of directors, or to said directors as trustees of said university corporation, which they assume was dissolved, to require said Smith to account to said company for the moneys which they charge equitably belong to it. No corporate action was sought, and no request that suit be brought. Obviously the wrong, if any, primarily was to the university company, and the board of directors of the company were the parties entitled to represent said corporation. [Loomis v. Railroad, 165 Mo. 469.] The gravamen of the complaint is that it was Smith's duty to communicate his information to said board, and their duty to require him to account.

Clearly no such duty was imposed on it (if in fact there was no board), and if there was no board, he was not a member of it.   If there was a board of directors, representing the corporation, they could ratify Smith's action in the premises, and in the absence of fraud and collusion with Smith to cheat their company, their conduct in ratifying the sale would be conclusive.   There is no allegation of fraudulent conduct on their part.

It appears elsewhere in the petition that the interest on the note given by the land company was unpaid, and by the terms of their contract with the land company, the university company had forfeited all right to the property and had no money or credit to redeem the land from sale. Who in the circumstances must judge whether they would involve their company in litigation save the directors?   The bare fact that Smith was one of the directors and joined with others in purchasing the note of the land company and afterwards purchased the property at a public sale by the disinterested trustee in the deed of trust would not render his purchase fraudulent.   At most it was voidable only.   It was said by Judge DILLON in Buell v. Buckingham & Co., 16 Iowa l. c. 293:   "It [a purchase by an agent or trustee] is made subject to the right of the principal or beneficiary, in a reasonable time, to say he is not satisfied with it. It is valid in equity as well as in law, unless the parties interested repudiate it or complain of it, but when the principal or parties interested do not complain, a mere stranger can not make the objection."   And the report of that case shows that the complainant in that case was a mere general creditor.

In Twin-Lick Oil Company v. Marbury, 91 U. S. 590, the Supreme Court of the United States, in a case much resembling this, on this point, says: "If it be conceded that the contract by which the defendant became the creditor of the company was valid, we see no principle on which the subsequent purchase under the deed of trust is not equally so.   The defendant was not here both seller and buyer.   A trustee was interposed who made the sale, and who had the usual power necessary

to see that the sale was fairly conducted, and who in this respect was the trustee of the corporation, and must be supposed to have been selected by it for the exercise of this power. The defendant was at liberty to bid, subject to those rules of fairness which we have already conceded belong to his peculiar position; for, if he could not bid, he would have been deprived of the only means which his contract gave him of making his debt out of the security on which he had loaned the money. We think the sale was a fair one. The company was hopelessly involved beside the debt to the defendant. The well was exhausted, to all appearance. The machinery was of little use for any other purpose, and would not pay transportation. Most of the stockholders who now promote this suit refuse to pay assessments on their shares to aid the company. Nothing was left to the defendant but to buy it in, as no one would bid the amount of his debt.''

And to the same effect is Olcott v. Railroad, 27 N. Y. 567, in which it was said: ''The defendants here (the creditors) are not competent to make that election. The mortgagor is the party most directly interested in the question, and the validity of the sale can not be impeached without its consent, or at least without giving it an opportunity to be heard.'' [Davoue v. Farming, 2 Johns. Ch. 267-8, and other cases cited.] In this case neither the university company which is the alleged debtor and equitable mortgagor, nor its directors or trustees are made parties.

III. As the purchase of the twenty acres at most was only voidable by the university company *in a reasonable time,* we come now to the consideration whether plaintiffs, granting they had a standing in a court of equity, have not lost it by their laches. The bill on its face discloses that Smith purchased on March 6, 1889, and sold to the receivers in May, 1889. This action was commenced in January, 1891. All the parties resided in Sedalia. The sale was public and the deeds of record. There is no allegation that any of

these facts were suppressed or concealed by Smith or any other person.

Did they commence this suit in a reasonable time?

This court in Kitchen v. Railroad, 69 Mo. 268, announced the doctrine "that delay under these circumstances is obnoxious to the equitable principle, which requires that an option to set aside such transactions as the one complained of must be exercised within a reasonable time when new rights and equities have intervened," quoting with approval from Graham v. Railroad, 2 McNaugh. & Gordon 156, in which a shareholder had remained passive for eighteen months, the remark of the chancellor that "by not coming earlier they have precluded themselves from asking for the exercise of the extraordinary jurisdiction of the court." We think the requisite diligence is not shown in this bill.

IV. But finally. The conclusive answer to this bill is that the fraud of which plaintiffs complain is not that of their debtor, the university company, but of Smith in buying that company's property while a director thereof.

In Parker v. Roberts, 116 Mo. 662, this court said: "The rule is well settled that 'the creditors of the party defrauded have no right, even though the fraud has the effect to diminish the means of paying them, to look into such fraud and unravel it. It is for him and him alone to do so, and if he chooses to acquiesce in the fraud or suffers himself to be concluded of his right to investigate or undo it, his creditors must be content to abide by the legal rights remaining in him.' "

And such is the weight of judicial opinion. See: Johnson v. Bennett, 39 Barb. 237; Garretson v. Kane, 27 N. J. L. 211; Bump on Fraudulent Conveyances, 18; Priest v. White, 89 Mo. 610; Graham v. Railroad 102 U. S. 148; Globe Co. v. Thacher, 87 Ala. 458; O'Conner Co. v. Coosa Co., 95 Ala. 614; Whitney v. Kelly, 94 Cal. 146. And the rule obtains with respect to corporations as well as individuals. [Graham v. Railroad, 102 U. S. 148; Priest v. White, 89 Mo. 616.]

A most interesting and novel contention made by

defendants is that plaintiffs can not bring this suit in their own names, but that it can only be done by the Attorney-General under section 1407, Revised Statutes 1899, and in the manner therein designated, but inasmuch as in our opinion the circuit court correctly held the plaintiffs had no standing in a court of equity on their bill, and as our time is too much engrossed to permit an examination of questions not deemed essential to the disposition of causes, we express no opinion of that proposition.

The judgment of the circuit court must be and is affirmed. *Sherwood, P. J.* and *Burgess J.*, concur.