## HEINEMAN, Respondent, v. MARSHALL et al., Appellants.

St. Louis Court of Appeals, December 12, 1905.

(Opinion by Goode, J.)

1. **FRAUDULENT CONVEYANCES:** Trustees of Corporate Funds: Fraudulent Purchase of Corporate Offices. Where the officers of a corporation resigned their offices and the control of the corporation, and turned the same over to other persons for a valuable consideration paid by such other persons, who purchased the control to use for their own benefit, the transaction was a flagrant breach of trust and the resigning officers were liable to account for the proceeds they received at the suit of the corporation itself, or a receiver of it, or any other party having a right to sue.

2. ————: Creditor of Innocent Grantor: Prior Creditor. A creditor cannot proceed to set aside a transaction by which his debtor, who is innocent, is defrauded of his property, but whether that rule would apply to a prior creditor under the facts in the present case is not decided.

3. ————: ————: Subsequent Creditor. A creditor of a corporation, whose debt was incurred long subsequent to a fraudulent transaction whereby the officers of the corporation for a valuable consideration sold the offices and the control of the corporation to other persons, could not maintain an action to recover from such officers the proceeds of the sale.

*(Dissenting Opinion by Nortoni, J.)

4. **TRUSTEES:** Secret Profits. Whatever the directors of a corporation acquire in the management of the corporate assets by way of secret profits to themselves belongs not to them but to the company.

5. ————: ————: Fraudulent Transaction. Where the officers of a corporation, for a valuable consideration paid to them, transferred the offices and the control of the corporation to other persons, the transaction was void and the proceeds were assets in the hands of such resigning officers, the legal title to which remained in the corporation.

6. ————: Fraudulent Conveyances: Void Transaction: Subsequent Creditors. Such transaction being void and incapable of ratification, the consideration paid the officers, as assets of such corporation, could be subjected by equitable garnishment to the payment of a judgment obtained by a subsequent creditor.

* See note on page 563.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale*, Judge.

REVERSED.

*Edwin S. Puller* and *Barclay, Shields & Fauntleroy* for appellants.

(1) An officer of such a corporation has the absolute right to resign. Having that absolute right, his motive or inducement to exercise that right cannot be a breach of trust, since he is not bound to continue in office. Briggs v. Spaulding, 141 U. S. 132; Fearing v. Glenn, 73 Fed. 116. The first of these cases holds that the relation of creditors to directors of a corporation is "that of contract and not of trust." No liability arises where a director merely exercises his legal rights. Craig v. Phillips, 3 Ch. Div. 722; Attaway v. Bank, 15 Mo. App. 578. (2) An agreement to utilize or to exercise an absolute right is no breach of trust. Where stockholders made a close agreement to elect directors and to control a company it was held to be neither illegal nor immoral, as they had the legal right so to do. Faulds v. Yates, 57 Ill. 416; 4 Thomp. Corp., sec. 4447; Craig v. Phillips, 3 Ch. Div. 722. (3) Plaintiff was not a creditor in 1899, but became so by her judgment four years later. So she has no standing to maintain this suit. There has been no "money or property wrongfully abstracted or withdrawn by officers of stockholders." Priest v. White, 89 Mo. 609, 1 S. W. 361; Farrar v. Walker, 3 Dill. 506. (4) A creditor (even if existing at the time) has no right to assert an equity existing in the corporation because of a breach of trust, without first invoking unsuccessfully the regular action of the corporation. There is neither allegation or proof thereof in this case. And an action based on a fraud upon the corporation cannot be the basis of suit by a creditor except by virtue of some statute not shown in this case.

Haseltine v. Messmore, 184 Mo. 298, 82 S. W. 115; Atwood v. Merryweather, 37 L. J. Ch. 35. (5) Official mismanagement is an offense against the corporation but not against creditors unless by statute. And no cause of action can arise thereon at law or in equity at the suit of a judgment creditor. 3 Thomp. Corps., sec. 4302. (6) A judgment creditor has no standing to enforce a liability of a person to the corporation unless the corporation (by its directors) has acted or a statute creates a right of action which is not pretended here. Simpson v. Reynolds, 71 Mo. 594; Water Co. v. San Diego, 89 Fed. 273; Smith v. Hurd, 12 Metc. 371; Wheeler v. Thayer, 121 Ind. 64, 22 N. E. 972; Hawes v. Oakland, 104 U. S. 460; Mealey v. Nickerson, 44 Minn. 430.

*Pearce & Davis* for respondents.

(1) Property received by a director of a corporation from a sale of his office as director, is, in equity, the property of the corporation, and the director must account to the corporation therefor. McClure v. Law, 161 N. Y. 78; Bent v. Priest, 10 Mo. App. 565; Bent v. Priest, 86 Mo. 475; Bent v. Lewis, 88 Mo. 467; Ward v. Davidson, 89 Mo. 445, 1 S. W. 846; Packet Co. v. Davidson, 95 Mo. 467; Sugden v. Crossland, 3 Smale & Gifford (Eng.) ; Gaskell v. Chambers, 26 Beav. 360; Rutland v. Bates, 68 Vt. 579; Coal & Iron Co. v. Humes, 157 Pa. St. 278. (2) A judgment creditor may, by bill in equity in the nature of an equitable garnishment, reach equitable assets the property of his debtor and held by third parties. Iron Co. v. McDonald, 61 Mo. App. 559; Ault v. Elier, 38 Mo. App. 608; Harmon v. Menke, 73 Mo. App. 639; Nichols v. Hubert, 150 Mo. 624, 51 S. W. 1031; Bank v. Barnett, 98 Mo. App. 477, 72 S. W. 727; Colesman v. Ins. Co., 74 Mo. App. 675; 1 Thompson on Private Corporations, sec. 1076. (3) In equitable garnishment proceedings, the creditors first moving secures thereby

a priority over other creditors, as a regard for his dili-
gence.   Pullis v. Robinson, 5 Mo. App. 552; Pullis v.
Robinson, 73 Mo. 212; Jackson v. Robinson, 64 Mo. 292;
Iron Co. v. McDonald, 61 Mo. App. 571; Rozelle v. Har-
mon, 29 Mo. 585.

GOODE, J.—Plaintiff is a judgment creditor of the
Supreme Coucil, Knights of Equity of the World, an
incorporated society organized, according to the avowal
of its charter, to disseminate good principles, alleviate
suffering and furnish fraternal insurance.   Its active
existence ceased in 1903 and since then it has had no
meetings and done no business.   Judgment was rendered
against it in plaintiff's favor on December 21, 1903, for
over twelve hundred dollars, including the costs of the
action.   There was a payment on the judgment of one
hundred and twenty-three dollars, but the balance still
remains unpaid.   An execution was issued for this bal-
ance and returned *nulla bona,* February 1, 1904, thus
proving that the association is insolvent.   After the re-
turn was made, the plaintiff instituted this action to
enforce payment of her judgment out of assets of the
association alleged to be in the hands of the defend-
ants, who were in 1899, trustees of the association and
its principal officers.   At that time, the defendant Mar-
shall held the chief office of supreme commander and
the defendant Cunningham the second office of supreme
vice commander.   The two defendants dominated the
board of trustees and, according to their own admissions,
completely controlled the affairs of the society.   On May
23, 1899, pursuant to an arrangement entered into prev-
iously, and for a pecuniary consideration received and
retained by them, they turned over the control of the
order to L. Dow Moore and his associates.   That result
was accomplished in this manner:   The members of the
board of trustees, at the instigation of the defendants,
resigned in succession, and as soon as a vacancy was
created by the resignation of one member, it was filled

by the remaining members electing some person selected by Moore in his stead. This course was followed until Moore and his associates had been given all the places on the board. Thereupon Marshall and Cunningham resigned their executive offices and Moore was chosen supreme commander and some dummy of his supreme vice commander. The association had practically no assets at the time and was more than one thousand dollars in debt. Moore's purpose was to use the business of the order for his own benefit, and the purpose of the defendants was to make a profit by selling the control to Moore. They obtained sixteen hundred dollars or more of notes and real property in the transaction. Marshall was the active party in the negotiation with Moore leading to the sale, and in testifying, both he and Cunningham, who is his father-in-law and solvent, as he is not, endeavored to exonerate Cunningham from complicity in the affair, but in our opinion failed to do so. However, it is not necessary to recite the facts which implicate Cunningham, because we hold that the plaintiff has no standing in court to compel either defendant to account for the proceeds of the transaction. The grounds on which plaintiff founds her claim to do so are that the profit the defendants procured by selling their offices and the control of the association, accrued to them as trustees consequently belongs of right to their *cestui que trust,* the association, and will be treated by a court of equity as an asset of it, which she may reach by this proceeding in the nature of an equitable garnishment, and have applied to satisfy her judgment. The general theory on which the plaintiff proceeds is sound, but not applicable to her case; because, so far as is shown, her debt arose four years after the fraud of which she complains. She is a subsequent creditor. Stress is laid in the briefs on several questions to which we will not attend; for we consider the fact just mentioned an insuperable obstacle to the relief invoked. As all emoluments received by trustees in dealing with the subject-matter

of their trust, enure in equity to the benefit of the trust estate, the property delivered to defendants by Moore for transferring their offices to him, belong to the association. They were free to resign their offices, no doubt, but in doing so for pay, and pursuant to an agreement that they would use their influence with obsequious trustees to have a new set of corporate officials installed, a flagrant breach of trust was committed, and they stood liable to account for the proceeds either to the order itself, a receiver of it, or any other party having the right to sue. [Bent v. Priest, 10 Mo. App. 543; s. c., 86 Mo. 475; M'cClure v. Law, 161 N. Y. 78; Gaskell v. Chambers, 26 Beav. 360.] Whether a creditor whose demand arose prior to the commission of the fraud, might call on the defendants to account for what they received as an asset of an insolvent company which the creditor was entitled to have applied on his debt, is a question we need not examine. Prior creditors may annul transfers of property made by their debtors without consideration, or with a general fraudulent purpose; whereas subsequent creditors can do so only when the transfer was executed with a view to incurring the subsequent debts and evading payment. [Kinealy v. Macklin, 89 Mo. 433; Snyder v. Free, 114 Mo. 360, 21 S. W. 847; Krueger v. Vorhauer, 164 Mo. 156, 63 S. W. 1098.] This rule of law governs in transactions wherein the debtor acted fraudulently. A different doctrine prevails where a third person obtains by fraud, property belonging to a debtor who is innocent; and in such instances creditors, though the loss of the property lessened the estate to which they must look for payment, cannot recover the property. The right to recover it belongs exclusively to the debtor himself or some one who has succeeded to his right. [Parker v. Roberts, 116 Mo. 662.] In recognition of this rule, a plaintiff who sought to enforce a judgment against property in the hands of a trustee of a corporation, and alleged to have been received under circumstances which made it a corporate asset, was denied re-

lief. [Ready v. Smith, 170 Mo. 163, 175, 70 S. W. 484.] The facts of that case were quite similar to those before us. Cases may arise in which the enforcement of this rule against a prior creditor of an insolvent company would be unfair — instances wherein it appeared that the company itself could not sue to redress the fraud because it was prevented by recreant officials. The present case is such a one, as was also precedent in which the Supreme Court of the United States refused to redress, at the suit of a subsequent creditor of a corporation, a fraud perpetrated by its directors. The new management composed of Moore and his satellites would do nothing, of course, to recover for the association what they themselves had paid to the defendants in fraud of the association, and if creditors are denied standing in court, in such a predicament, they would have to ask the appointment of a receiver who could sue. But this would needlessly raise an impediment to the collection of their demands; and in the case of prior creditors, who enjoy an undeniable right to reach all the assets of the company for the satisfaction of their debts, an exception might be made when corporate officers participated in or connived at the fraud. Procuring a receiver is, as we shall see, the remedy to which a subsequent creditor must resort.

The question regarding the right of a creditor of a corporation to sue a party for the recovery of corporate property fraudulently obtained by said party, is altogether distinct from the question of the creditor's right to sue without first demanding of the company officials that they take action in the name of the company. As to the latter point, which is dwelt on in the briefs of counsel, we will say nothing; for it is not essential to our decision. Nor are we bound to ascertain whether the rule that creditors cannot expose a fraud practiced on their debtors, is applicable to the present cause. The decisive fact is that the plaintiff's debt accrued after the occurrence of the breach of trust which constitutes the

basis of her proceeding against the defendants.  We have
been cited to adjudications which merely enforced the
firmly established remedy of equitable garnishment, and
to others wherein corporate directors and trustees were
made to account to their company or to a shareholder,
receiver or assignee thereof, for profits made by means
of their fiduciary positions; but we have been cited to
no precedent, nor have we found one, wherein a director
or trustee was compelled to account at the suit of a
subsequent creditor.  Precedents of high authority are
to be found denying the relief to that class of complain-
ants, and those precedents are in accord with the general
rules of equity governing the rights of subsequent cred-
itors.  The most apposite discussion of this subject is Gra-
ham v. Railroad Co., 102 U. S. 148, a case which furnishes
the rule of decision in the cause at bar; for, in relation to
the point of law involved, its facts are not materially
unlike those we are considering, and the doctrine of the
opinion was cited and approved by the Supreme Court
of Missouri in Ready v. Smith, supra.  It was averred in
the bill, and the averment was supported by evidence,
that the directors of the railroad company had sold land
belonging to the company to an ostensible buyer, the di-
rectors themselves being the real buyers, or interested in
the purchase.  Three years afterwards the complainants
recovered judgments against the railroad company on
debts which arose after the sale, and had executions
levied on the land as still belonging to the company.
Complainants then sued in equity to have the deed made
in consummation of the alleged fraudulent sale set aside,
the land made subject to the lien of the executions and
the railroad directors, who had acquired title through
the sale made by themselves as directors, enjoined from
asserting their title.  The position taken for the com-
plainants was, that as the railroad company had been
defrauded of its property and might have proceeded to
recover it, so any judgment creditor of the company
might proceed for the same purpose.  The opinion con-

ceded for the argument, that existing creditors could do so, but said no authority except dicta of judges could be found for allowing a subsequent creditor to interfere. The points adjudged were that subsequent creditors can neither assail a fraudulent conveyance of property by their debtor, unless the fraud was directed against them, nor question a transaction by which, before their debts arose, the debtor was defrauded. The first proposition has been decided frequently; the second has been presented for decision rarely, and we know of no judgments maintaining a doctrine contrary to the one declared by the Supreme Court of the United States.

One perceives that permitting a creditor to pursue property out of which a debtor has been cheated, would facilitate the collection of the debt. So would permitting a subsequent creditor to challenge previous transfers fraudulently made by the debtor. But this consideration has not induced the courts to accord the right of interference to such creditors; presumably because they did not extend credit in reliance on the property fraudulently parted with by, or withdrawn from, the debtor.

It is true that a better reason can be brought forward why a creditor of a corporation should be allowed to pursue property belonging to it in the hands of a party who procured the property by fraud, than can be given for allowing the creditor of an individual to do so; for an individual can always exercise his right to seek redress against a fraud; whereas a corporation may be under the control of directors or trustees, who are interested in taking no step to redress the wrong. This was the situation in the Graham case, and in the present one. That argument was pressed and overruled in the Graham case; and in disposing of it, the court said, among other things, that when a corporation becomes insolvent, a court of equity will take charge of it and collect its assets for the benefit of creditors.

The judgment is reversed. *Bland, J.,* concurs, and *Nortoni, J.,* dissents.

Heineman v. Marshall.

NORTONI, J. (dissenting).—At first I concurred in the opinion of the court as expressed by the learned judge, but on motion for rehearing I became persuaded that the case does not fall within the influence of the principles so clearly and forcibly stated in the opinion of the court. I know that as a rule no good can come from dissenting opinions. The time consumed in their preparation might be more profitably occupied in disposing of cases not decided. Notwithstanding this fact, however, I cannot refrain from attempting to point out what seems to me a feature of this case which distinguishes it from the authorities cited and relied upon in the opinion of the court. With the statements of law in that opinion, I find no fault. It appears to me that those principles which are pertinent to a transaction voidable only are not pertinent to this transaction, which was wholly and absolutely void, so that in no sense could it have been ratified.

Now, in the first instance, it is well settled and the broad principle is, that whatever a director of a corporation acquires in virtue of his fiduciary relation by way of secret profit, or otherwise, except in open dealing with the company, such as directors in common with strangers may sometimes have, belongs not to him but to the company, and it is said that nothing less than this satisfies the law. [Bent v. Priest, 10 Mo. App. 543-558; Sugden v. Crossland, 3 Sm. & Giff., 192; Bent v. Priest, 86 Mo. 475.] In the case last cited, our Supreme Court said:

"These cases are all quite clear to the effect that the trustee will not be allowed to make gain to himself, beyond his allowed compensation, by reason of his office and influence as such trustee. By accepting the office the director undertakes to give his judgment and influence to the interests of the corporation in all matters in which he represents or professes to represent it. That judgment and influence, of right, belongs to the corporation, and so does that which it produces, and the bonds

received by the director are its property, as between it and the defendant."

From these considerations it appears to me that the moneys or other secret profit which Marshall received by selling out his trust, belonged "not to him, but to the insurance company," and therefore, it was competent for the plaintiff in this case, a judgment creditor of the insurance company, to garnish the same as assets of the insurance company. The transaction which Marshall had with Moore and out of which the assets arose, was void as against public policy. The transaction being in fraud, with which all parties participating therein were contaminated, the law would not aid Moore to recover from Marshall the moneys or property he had paid him to vacate his office and turn the insurance company over to him, and had Moore refused to pay the same to Marshall, the law would not have aided Marshall to recover from Moore thereon. Therefore, as Moore had paid the amount agreed upon to Marshall, the title thereto had divested from Moore and had vested in the insurance company, for in a case of such an absolutely void transaction, no title could vest in Marshall no more than could the title of stolen property vest in the thief who stole it nor title vest in the grantee of a void deed. It seems to me that this feature of the case falls within the influence of the same principle which controls in cases of stolen goods, in which cases the law forbids the vesting of the title in the thief. The transaction between Marshall and Moore, by which there came into being a profit, in virtue of Marshall's office, being absolutely void as against public policy, the legal title to the profit could not have vested in Marshall, and it having divested from Moore, it was absolutely necessary for it to vest some place. As has been said: "As nature abhors a vacuum, so the commom law abhors the absence of absolute ownership somewhere in property of whatever description." [Cape Girardeau v. Harbinson, 58 Mo. 94.] And while I concur in the opinion that the

assets thus in the hands of Marshall are in their nature
equitable assets which are liable to be sought and called
in by proper bill in equity for that purpose by the insur-
ance company or its receiver, I am also of the opinion
that under the authorities, they are assets of the insur-
ance company and to which the insurance company owns
the legal title. This conclusion is enforced largely from
the principle that as nature abhors a vacuum, so the
common law abhors the absence of absolute ownership
somewhere in property of whatever description, and I
am persuaded that the authorities bear me out on this
question. The Supreme Court said, in Bent v. Priest,
supra, l. c. 486: "The bonds received by the direc-
tor are its (the company's) property, as between it
and the defendant." And again, on the same page:
"However that may be, what the director makes
in his office as such belongs to the corporation."
And in the same case, 10 Mo. App. 558, in speak-
ing of the asset which arose by the director selling
out his company, very much as in this case, the court
said: (the asset) "belongs not to him, but to the com-'
pany. . . . That profit belongs to the company."
And in recognition of this principle, that the asset thus
created and brought into being by such wrongful and
fraudulent conduct of the director, belongs to the com-
pany, the Court of Appeals of New York in M'Clure v.
Law, 161 N. Y. 78, sustained an action for money had
and received by a receiver of an insolvent insurance com-
pany against a director who had sold out his trust and
resigned his office, as in this case, and held that the
amount of moneys thus obtained by the director were
assets of the company for which money had and received
was a proper action. Citing Sugden v. Crossland, supra,
in which case Horsefield was a trustee under a will and
Crossland paid him seventy-five pounds to withdraw
from the trust and have him (Crossland) appointed in
his place. It was held that the seventy-five pounds be-
longed to the society. Sugden v. Crossland was a case

in equity, to be sure, but the principle of it is that which was deduced by the Court of Appeals of New York in McClure v. Law, supra, that is, that "the seventy-five pounds belonged to the society." In the latter case, the court concluded its opinion in the following words: "the corporation may compel the director to turn over to it all the money or property so received by him." While it is clear to my mind that the asset of the insurance company in the hands of Marshall was one for which he could properly be called upon to account in a court of equity, by the company or its receiver, it is equally clear from the principle involved and the authority of that case that the insurance company had such a title to the asset as would have enabled it to maintain an action for money had and received for the same, and if Marshall had received a horse for his perfidy instead of other property, that the insurance company would not have been compelled to go into equity for an accounting but could have maintained replevin against Marshall for the same. The horse would have been the property not of Marshall, but of the insurance company. As said in Bent v. Priest, supra: "That judgment and the influence (speaking of the judgment and influence of the director) of right belongs to the corporation, and so does that which it produces and the bonds received by the director are its property as between it and the defendant." It thus appearing that the asset which was created by the fraudulent transaction of the debtor was an asset of the comany, I am of the opinion that it was liable to the equitable garnishment herein sought to satisfy a judgment and execution against the company even though the judgment be subsequent, and that the principle applicable to the case of subsequent and prior creditors relied upon in the majority opinion, is inapplicable. It seems to me that it is sufficient that the plaintiff is a judgment creditor of the insurance company and that she has discovered an asset of the judgment debtor and seized upon the same to

satisfy her judgment debt, and that it is wholly immaterial whether that judgment was obtained subsequent to the transaction out of which the asset arose.

Now the court lays stress upon the fact that plaintiff was a subsequent creditor, and applies to this case the principles which obtain in the case of a subsequent creditor, attempting to set aside a conveyance of the debtor's property which has been obtained by fraud perpetrated upon the debtor. I am unable to appreciate how this principle is pertinent to this case: Indeed, it is true as a general proposition that a creditor will not be allowed to unravel the fraud perpetrated upon the debtor when the debtor is innocent, inasmuch as such transactions are not void but are voidable only, and being such, they are capable of being disaffirmed or ratified by the debtor upon whom the fraud is perpetrated, and the creditor is precluded from unraveling the same upon the principle that the transaction being voidable only, the debtor himself may see fit to ratify it. Now in this case, the creditor is not seeking to unravel the fraud perpetrated upon the debtor in a transaction that could be ratified and rendered valid by the debtor upon whom the fraud was perpetrated, but she is seeking to avail herself of the assets of her debtor, which were created and came into existence by virtue of the fraud committed, and which fraud is of such a nature as to render the transaction absolutely void and not voidable only. In no sense could the debtor ratify this transaction and render it valid, and therefore I am persuaded that she should not be denied relief upon the principle applied in cases of subsequent creditors seeking to unravel the debtor's fraud. The court relies upon Graham v. Railway Company, 102 U. S. 148, as a precedent. Let us examine the case. It will be observed by reference to page 154 of the report, that the real question in decision was: "The question still remains whether, the debtor being unwilling to disturb the transaction, subsequent creditors have such an interest that they can reach the

property for the satisfaction of their debts." And the court very properly answered "No." Let us admit all of this, for it is undoubtedly true, but that is not this case. The court was there treating not of a void transaction, but one that was voidable only. For instance, a fraud had been perpetrated upon the debtor and it had made a deed conveying certain lands. It was this deed that the subsequent creditors were endeavoring to set aside. That case is similar to this insofar as the fraud perpetrated was upon, not of the debtor, there the railroad company, here the insurance company, in each case the debtor being the party aggrieved. In either case, the debtor stands with clean hands, and both companies, the railroad company there, the insurance company here, could have proceeded to set aside and recover the fruits of the transaction because in neither case was the debtor guilty of fraud. So far, the two cases are in principle identical. But here we come to the parting of the ways, insofar as they are concerned, as follows: Now in the Graham case, the transaction being only voidable in the first instance, the debtor, the railroad company, could have ratified the voidable deed, as in fact it did. It stood as the innocent party having been defrauded, and it had the right and it was competent for it to disaffirm the voidable transaction and recover that of which it had been defrauded; or it could, upon discovering the fraud, if it saw fit, have ratified the transaction and if it chose the latter course, as it did, thereupon the deed that had theretofore been voidable, became valid. But in the case now before the court, it is wholly impossible for the insurance company to ratify this transaction by which Marshall sold out the company and pocketed the proceeds. It is true that the insurance company itself, being the innocent party, could have proceeded upon discovering Marshall's fraud, and recovered the funds from him, but it is true as well that upon such discovery, it could not ratify and render valid the transaction by which Marshall converted to his own use large sums of

money, being the property of the company. To have ratified this would practically have amounted to the ratification of an embezzlement of the company's funds, which are properly held to the use of the policy-holders. The transaction being thus void, no right or title could have vested in Marshall to these assets which it was competent for the insurance company to have ratified and made secure in him. The transaction was no more susceptible of being rendered valid by ratification than if Marshall had purloined from the till of the insurance company the same amount of money, and under these circumstances the right and title to the money would have remained in the insurance company.

Now the case of Ready v. Smith, 170 Mo. 163, 70 S. W. 484, was that of a prior creditor seeking to subject the property to the satisfaction of his debt, out of which Ready alleged his debtor had been defrauded, and the Supreme Court denied the relief upon the same principle as in the Graham case, and said that as the transaction set out in the bill was not void, "at most it was voidable only;" (p. 173) that as it was competent for the debtor to ratify the same, the creditor had no right to complain. The same principle controls in each of those cases, as I understand them; and that is, that the subsequent creditor in one and the prior creditor in the other is precluded from relief, not on the ground that one is a subsequent and the other a prior creditor, although in the Graham case the fact of the plaintiff being a subsequent creditor was mentioned, but the relief is denied on the principle that the transactions which they sought to impeach were frauds perpetrated upon the debtor, and of which the debtor was innocent, and therefore they were capable of being disaffirmed or ratified, and that inasmuch as the debtor had made no move to disaffirm the same, the creditor would not be permitted to come in and do so. Now there is a marked distinction in the case of a transaction which is absolutely void as against

117 App.—36

public policy and one which is voidable only. While nothing can pass by a deed absolutely void, from deeds which are voidable only, fair title may flow. [Crocker v. Ballangee, 6 Wis. 645; Somes v. Brewer, 2 Pick. (Mass.) 184.]

In Armstrong v. Tuttle, 34 Mo. 432, it is held that when a party has taken possession of goods as trustee under a deed of trust which is void as to the creditors of the grantor, the party so taking possession becomes the debtor of the grantor under the void deed of trust to the amount of the goods, and may be garnished by the judgment creditor of the grantor. The principle of this case is an undoubted truism, that the deed being void, nothing could pass from the grantor to the trustee thereunder, and that if the trustee sold or retained the goods under such void deed if trust, he became the debtor of the grantor, in whom the title still resided, for the very sufficient reason that it was impossible for the title to pass from him by virtue of the void conveyance. It seems to me that this distinguishing feature between a void and a voidable transaction is the principle which should influence the judgment of the court in this case. In other words, I am of the opinion that a transaction, absolutely void, ought to be measured and ascertained by the principles applicable to void, as distinguished from voidable, transactions; that it ought not to be measured by the principles applicable to voidable transactions. On the other hand, that voidable transactions ought to be measured and ascertained by the principles applicable to voidable, as distinguished from absolutely void, transactions, and ought not to be measured by principles applicable to void transactions. Entertaining this view, I have found myself wholly unable to appreciate the pertinency of the principles applied by my very learned and esteemed associate to the case in judgment: Now this transaction, void as it is against public policy, no reason exists that I can see, for applying the principles of the cases cited in the majority opinion to this, for they

were cases involving voidable and not void transactions. Suppose, for instance, an extreme case to illustrate, that Marshall had purloined or wrongfully appropriated five thousand dollars from the insurance company's till. Would this plaintiff, a judgment creditor of the insurance company be compelled to await the action of the insurance company to recover it, or would she be denied relief upon the principle that it was her duty to stand idly by and wait to see whether or not the insurance company would ratify or disaffirm the act of Marshall in thus wrongfully appropriating the company's funds? The answer must be "No." And why is the answer "No?" Because the transaction would be of a nature which rendered it incapable of ratification and there would be no reason to await the action of the insurance company, in that behalf. Nor would there be reason to deny the plaintiff relief in that case on the principle that the debtor alone is permitted to proceed inasmuch as the debtor could not ratify such transaction, for the debtor would be unable to ratify because its very nature rendered it incapable of ratification. I am persuaded that in such a case, the transaction being absolutely void, as a matter of course, it would be quite competent for this plaintiff to proceed and garnish those moneys in the hands of Marshall as assets of her judgment debtor. The title to the five thousand dollars thus wrongfully taken from the till, would remain in the insurance company on the same principle that title to property under a deed which is absolutely void, remains in the grantor or title to stolen property remains in the owner from whom it was stolen.

Entertaining these views, with the very fullest measure of regard and esteem for my learned associates and their great learning and ability, I most respectfully dissent from the order overruling the motion for rehearing.

Note.—The above dissenting opinion was not filed in the cause and is not a part of the record but is inserted here as a courtesy to the judge who wrote it.—Reporter.