BAKER et al. v. CUNNINGHAM et al., Appellants.

**Division One, April 16, 1901.**

1. **Possession by Mortgagee: RENTS: ACCOUNTING.** The mortgagee in possession of the mortgaged premises is accountable for the rents, and is bound to apply them in reduction of the mortgaged debt, but on an accounting is entitled to be reimbursed for taxes paid and interest on the debt up to the time he caused the deed of trust to be foreclosed. And if a statement of the account shows the entire debt was not then paid, his trustee's deed can not be set aside at the suit of the mortgagor's heirs. And when the mortgagee is dead, loose evidence of statements made by him as to the annual rents received by him will be received with great caution.

2. **Deed of Trust: SALE: MISTAKE IN ADVERTISEMENT.** A mistake in the advertisement of a foreclosure sale under a deed of trust, that it was made in 1874 instead of 1871 as in fact it was, is no ground for setting aside the sale if the advertisement describes the deed of trust as having been made by the actual parties and gives the book and page of its record, or if it in anywise so identifies the deed of trust to be foreclosed as to mislead no one.

3. ————: **SETTING ASIDE SALE: LACHES.** Plaintiffs by their averments claim that they knew the mortgage debt had been paid for ten years. But they continued to pay rent to the mortgagee. Afterwards, when he foreclosed, bought in the property, and brought unlawful detainer, they set up no claim that the debt had been paid, but waited two years longer until after his death, and then brought suit to set aside the sale and trust deed. *Held,* that they were guilty of such gross laches as barred their recovery.

4. ————: **FORECLOSURE SALE: BONA FIDE PURCHASER.** A bona fide purchaser at a trustee's sale under a duly recorded deed of trust which appears unsatisfied on the public records, is not obliged to inquire if the holder of the note purchased it after its maturity, or bought it with notice that its payee held it in fraud of the rights of others. He is not required to look further than the records themselves. He is not chargeable with notice as a purchaser of the note after maturity.

5. ————: ————: **PRINCIPAL AND AGENT: INNOCENT PURCHASER.** A real estate agent in writing agreed to sell land to defendant and give him a good title by warranty or trustee's deed. He knew that

.Baker v. Cunningham.

a second note and deed of trust, which had three years previously been foreclosed, had been given in substitution of the note described in the first mortgage which he was about to have foreclosed, and that the holder of said first note had informed the purchaser of the substituted note, that the substituted note was secured by a first lien, and that he had also transferred the original note after its maturity, but he revealed none of these things to the defendant, but at the foreclosure sale bought the property and had the deed made to defendant. *Held*, that the real estate agent was not defendant's agent, and defendant could not be charged with his knowledge.

Appeal from Johnson Circuit Court.—*Hon. W. W. Wood, Judge.*

REVERSED.

*J. W. Suddath* for appellants.

(1) The mortgagee is entitled to credit for taxes paid. Gooch v. Botts, 110 Mo. 419. (2) Inadequacy of bids does not avoid sale. Vail v. Jacobs, 62 Mo. 130. (3) The mortgagee is entitled to possession until debt is paid and can not be ejected until then, and limitation does not run while he is in possession. Hubbell v. Moiden, 53 N. Y. 225; Fee v. Swingley, 13 Pac. 375; 15 Am. and Eng. Ency. Law (1 Ed.), p. 819. (4) Mere clerical errors in publication, such as could not have misled anyone, will not set aside sale. 26 Am. and Eng. Ency. Law (1 Ed.), 920; Morgan v. Joy, 121 Mo. 684; Noland v. Bank, 129 Mo. 61; Powers v. Kueckhoff, 41 Mo. 430; Gray v. Shaw, 14 Mo. 346. (5) Oral admissions made long anterior to the time offered are very unsatisfactory evidence. Burn v. Burn, 56 Mo. App. 509; Hitchcock v. Baughan, 36 Mo. App. 216; Newcomb v. Jones, 37 Mo. App. 475. (6) When a grantor in a deed seeks its cancellation and re-investure of title on the ground of fraud or mistake,

the onus is on him to produce evidence of his ground for recovery so clear, definite and positive as to leave no reasonable ground for doubt. Jackson v. Wood, 88 Mo. 76; Philpot v. Penn, 91 Mo. 43; Keiser v. Gammon, 95 Mo. 224. (7) Where a resulting trust is sought to be established by parol evidence, to warrant a decree the evidence must be so clear, definite and positive as to leave no reasonable ground for doubt. Philpot v. Penn, 91 Mo. 43; Johnson v. Quarles, 46 Mo. 423; Forrester v. Scoville, 51 Mo. 628; Jackson v. Wood, 88 Mo. 76. (8) The law governing resulting trusts must determine the rights of these parties. Jackson v. Wood, 88 Mo. 77; McNew v. Booth, 42 Mo. 192; Faust v. Hass, 73 Pa. St. 295; Christy v. Sill, 95 Pa. St. 382; Keiser v. Gammon, 95 Mo. 217.

*Chas. E. Morrow* for respondents.

(1) Cunningham was a mortgagee in possession and is chargeable with and must account for all the rents received by him, to be applied on the mortgage debt, on account of his agreement with McCausland and as a matter of law. Washburn on Real Prop. (3 Ed.), sec. 578, p. 205; Walton v. Withington's Adm'r, 9 Mo. 550; Ely v. Turpin, 75 Mo. 83; Turner v. Johnson, 95 Mo. 431; Stevenson v. Edwards, 98 Mo. 622. (2) The declaration and admissions of Cunningham, proved by plaintiff, are admissible. (a) They were against his interest and in disparagement of his title, and are not only admissible against him, but his representatives and those claiming in privity with him. Wilson v. Albert, 89 Mo. 545; Darrett v. Donnelly, 38 Mo. 492; Morey v. Staley, 54 Mo. 419. (b) While it was not necessary for plaintiffs to prove a contract between McCausland and Cunningham in order to recover; and while it is not necessary to bring the declarations

and admissions of Cunningham within the rule to establish a resulting trust or divest a title; yet, they are brought within that rule by the testimony in this case, for they are strongly corroborated by all the facts, circumstances and testimony in the case. Berry v. Hartzell, 91 Mo. 123; Johnson v. Quarles, 46 Mo. 423; Ringo v. Richardson, 53 Mo. 385; Kennedy v. Kennedy, 57 Mo. 73.

MARSHALL, J.—This is a suit in equity to cancel a trustee's deed and to revest title in the plaintiffs. The plaintiff Sarah E. Baker was formerly the wife of Alexander McCausland, and is now the wife of William Baker, and a daughter and one of the devisees under the will of James F. Cunningham, and her co-plaintiffs are her children begotten of her marriage with Alexander McCausland, and the defendants are the widow and other children of James F. Cunningham, and his executor and the other legatees under his will.

The facts are these: On the twentieth day of March, 1871, Alexander McCausland was the owner of the southeast quarter of the southwest quarter of section 24, township 45, range 29, containing forty acres and of an undivided one-half interest in fifteen acres off of the south end of the east half of the southeast quarter of the same section, township and range in Johnson county. On that day he executed his negotiable promissory note for three hundred and ninety dollars to the order of David Davenport, payable twelve months after date, with ten per cent interest after maturity, and secured the same by a deed of trust on the said land, naming Francis M. Cockrell as trustee. When the note fell due, McCausland was unable to pay it or any part of it and so the matter stood up to 1874 or 1875. At that time, John Newton had acquired the note and deed of trust, and was threatening to foreclose. McCausland induced his father-in-law, James

F. Cunningham, to purchase the note from Newton. McCausland went west and joined a surveying party which was lost and the last that was heard from him was in June, 1879. Cunningham entered into possession of the land when McCausland left and rented it and controlled it thereafter. From 1875 to 1877 the property was worked by Mage Cunningham. In 1877 it was rented to John R. White. In 1879 and 1880 it was rented to Glover. From 1880 to 1884 it was rented to Robinson & Seamonds. From 1884 to 1894 Mrs. McCausland and her children occupied it. The defendants' evidence tends to prove that they paid no rent from 1884 to 1890, and that from 1890 to 1894 they paid an average of thirty dollars a year rent. In 1894 they refused to pay any more rent, and Cunningham caused the deed of trust to be foreclosed, and received a trustee's deed therefor, which is the deed sought to be cancelled. Cunningham then instituted unlawful detainer proceedings against the McCauslands and ejected them from the premises. Cunningham died in May, 1896, and this suit was begun on the seventh of August, 1896. Cunningham paid the back taxes on the land for the years 1870 to 1873, inclusive, amounting to $288.35, and after he took possession in 1874 he paid the taxes and repairs until he died, amounting, according to defendant's evidence, to $289.94, and according to the plaintiff's evidence, to $230.62. The plaintiff introduced testimony tending to show that the land would reasonably rent for two dollars and a half an acre a year, and that Cunningham swore in the unlawful detainer case that he had collected on an average of one hundred dollars a year rent; also evidence tending to show that while the McCauslands occupied it they set apart one-third of the crop each year for Cunningham's rent, and that the land would yield fifteen bushels of wheat a year, worth eighty cents a bushel, and twenty-five bushels of corn, worth twenty-five

cents a bushel, and that the neighbors had seen the McCausland boys hauling corn in the direction of Cunningham's house during years from 1884 to 1894; also evidence tending to show that for the year 1879 Cunningham received $80 rent for the place from Cook, and for the year 1880, he received $100 from Cook (other witnesses testified that for the years 1879 and 1880, the place was rented to a man named Glover). The petition charges that Cunningham collected one hundred dollars a year rent from 1877 to 1884, and that from 1884 to 1893, inclusive, the plaintiffs occupied the land as tenants of said Cunningham and paid him in wheat, flax, corn, and oats, "the exact amounts for each year being unknown, but of the reasonable value of $100 per year."

The plaintiffs predicate their right to relief on two grounds: First, that in the trustee's advertisement the deed of trust was described as having been executed in 1874, whereas, in fact, it was executed in 1871; second, that Cunningham entered into possession of the property under an agreement with McCausland that he would apply the rents, issues and profits upon the debt, and that before the foreclosure such rents, issues and profits amounted to more than enough to pay off and discharge the debt, and hence the sale under the deed of trust was unauthorized and conveyed no title, and the plaintiffs prayed for an accounting, for a cancellation of the trustee's deed to Cunningham, and for a judgment over for $1,050 against the estate of Cunningham. The defendants, on the contrary, claim that Cunningham only received rent from the place from other parties for two years, and from the plaintiffs for four years, and that, after deducting the rents so received, there was due Cunningham at the time of the foreclosure, for principal and interest and taxes paid by him, the sum of $1,736.73. The trial court decided the first contention against the plaintiffs, but sustained the second, and

found that James F. Cunningham, prior to the foreclosure, received from the rents, issues and profits, under an agreement to apply them upon the payment of the debt, an amount more than sufficient to pay off the debt, interest and taxes, and, therefore, entered a decree cancelling the trustee's deed and revesting the property in the plaintiffs. The court did not state the account, but made a finding as stated. After proper steps the defendants perfected this appeal.

## I.

The petition charges that Cunningham was let into possession in 1875 by McCausland, under an agreement that he would apply the rents, issues and profits to the payment of the mortgage, and an accounting is prayed.

The general rule of law is that, "a mortgagee in possession, whether in person, by trustee, receiver, or by a tenant, is in equity accountable for the rents and profits of the estate, and is bound to apply them in reduction of the mortgage debt. After paying the interest of the debt, any balance of receipts is applicable to reduce the principal. The mortgagee is not allowed to make a profit out of his possession of the estate. Therefore, upon a redemption of the mortgaged premises by any one interested in them, he is obliged to state an account of his receipts from the mortgaged property, and he is entitled to allowances for all proper disbursements made by him in respect of the premises." [2 Jones on Mortgages (5 Ed.), sec. 1114; Hannah v. Davis, 112 Mo. 599; Stevenson v. Edwards, 98 Mo. 622; Turner v. Johnson, 95 Mo. 431.]

The mortgagee will not be held accountable for more than the rents actually received unless he has been guilty of fraud

or negligence. [Turner v. Johnson, supra; Stevenson v. Ed wards, supra.]

"The mortgagee in possession takes the rents and profits in a quasi character of trustee or bailiff of the mortgagor. In equity he must apply them as an equitable setoff to the amount due on the mortgage. Such a receipt is not a legal satisfaction of the mortgage. There is no payment and satisfaction of the mortgage until the rents and profits are applied to the payment of the debt." [2 Jones on Mort., (5 Ed.), sec. 1115.]

"The mortgagor's right to hold the mortgagee to account for rents and profits of the mortgaged premises, or for waste done to them, must be enforced in equity and not by suit at law. Though the rents received may be sufficient to satisfy the debt in full, the only remedy of the mortgagor is by a bill in equity for an account and redemption." [Ibid., sec. 1116.]

Of course the mortgagee in possession, upon such an accounting is also entitled to be reimbursed for taxes paid and for necessary repairs made upon the premises. [Hubbell v. Moulson, 53 N. Y. 225.]

Applying these rules to case at bar the result is, that it appears that Cunningham received $80 rent for the year 1879, $100 for the year 1880, some wheat, corn, etc., during the years the plaintiffs occupied the premises from 1884 to 1893, but the petition states that such amount is unknown to the plaintiffs and the testimony is equally vague and uncertain as to the amount, but the defendants say it amounted to thirty dollars a year for the years 1890 to 1893 inclusive. It appears from 1875 to 1879 the place was worked by or rented to Mage Cunningham, John White, and Glover, but how much they paid is not disclosed, and that from 1880 to 1884 it was rented to Robinson and Seamonds, but it is not shown how

much they paid. The trial court did not state any account but found generally that Cunningham received more than enough to pay the debt, and hence the mortgage was paid when it was foreclosed. We are not advised how the court reached this conclusion. The evidence of the rents received is wholly insufficient to afford data enough to intelligently state an account thereof. The known factors for such a computation are these: the debt secured was $390; the interest was $39 a year, which from 1875, the date Cunningham took possession, up to 1894, the date of the foreclosure of the deed of trust, amounts to $831; Cunningham paid the back taxes from 1870 to 1873, inclusive, amounting to $288.35, and the taxes thereafter amounting, according to the plaintiff's computation, to $230.62, aggregating $1,739.93. On the other hand, Cunningham received $80 rent for the year 1879, $100 for the year 1880, and wheat, corn, etc., for an amount not shown by the plaintiffs, but shown by the defendants to equal $30 a year for four years, making $120, during the ten years the plaintiffs occupied the land, aggregating $300. Plaintiffs introduced evidence tending to show that the land would reasonably rent for $100 a year, and also declarations of Cunningham that it yielded him that much rent a year. Give effect to this and charge him with rent at $100 a year for the years 1875 to 1879, and from 1880 to 1884, making eight years, and add this $800 to the $300 he is shown to have received for the years 1879 and 1880, when Cook is said to have paid it, and the years 1884 to 1894, while the plaintiffs occupied it, and it shows a total amount of $1,100 received by Cunningham. This is $639.93 less than the debt, interest and taxes due him at the date of the foreclosure. This is as close to a mathematical statement of the account as the evidence warrants. There appears, therefore, to have been a balance due Cunningham of $639.93 at the date of the fore-

closure, and if this is true, the debt was not paid, and Cunningham had a right to foreclose the deed of trust, and acquired a good title to the land, for the rents, issues and profits thereafter arising belonged to him as owner and not as mortgagee.

Evidence of loose statements of Cunningham that he received a hundred dollars a year are very unsatisfactory at best, and when such statements come after Cunningham is dead, and therefore it is not possible to controvert the evidence that such statements were in fact made, they are received with great caution by a court, and can not be allowed to overcome the direct evidence that he did not receive that amount per year during 1879, or during the years 1884 to 1894 while the plaintiffs occupied the premises. The facts proved did not, therefore, justify the finding of the trial court that the rents collected had extinguished the debt when the deed of trust was foreclosed, and the trial court erred in so holding and in cancelling the trustee's deed to Cunningham and in revesting the property in the plaintiffs.

The trial court properly held that the statement in the trustee's advertisement that the deed of trust was made in 1874 when in fact it was made in 1871, did not mislead the plaintiffs or any one else and, therefore, it was immaterial. The immateriality in this error of date is made more manifest when it is remembered that the trustee's notice described the deed of trust as having been made by Alexander McCausland and Sarah E. his wife and stated that it was recorded in book D, at page 562, of the records of Johnson county. This identified the deed of trust intended to be foreclosed, and it is the only deed of trust on this land which the evidence shows Alexander McCausland and Sarah E., his wife, ever made.

## II.

There is another reason for refusing the relief asked by the plaintiffs. They have been guilty of such gross laches, that they have no standing in a court of chancery. If their averments are true they knew when the deed of trust was foreclosed, that the debt was extinguished and the deed of trust was satisfied. But they stood quietly by and permitted the deed of trust to be foreclosed and the land to be sold. Afterwards, they were sued in unlawful detainer for the possession of the land and judgment went against them. Yet they took no steps to protect their rights even in times of dire extremity. On the contrary, they never set up the claim that the debt was paid until more than two years after all these matters had occurred and after Cunningham's lips were sealed in death. As long as he, whose duty it was to account, who knew how much he had received, who alone could deny or disprove the testimony ascribing loose declarations to him, was alive, these plaintiffs remained quiet and asserted no claim. But before the grass was green over his grave they rush into a court of equity with this suit against the mother and sisters and brothers of the plaintiff Sarah E. Baker. They remained perfectly acquiescent and passive until the father had died, took advantage of legacies and bequests to them in his will, and then instituted this suit. There is no equity in such a claim. As was well said in State ex rel. v. West, 68 Mo. loc. cit. 232: "A court of equity does not lend a helping hand but to the prompt and vigilant. Here the fact of Burros's purchase was known to the county court, within a short time after it occurred, and yet no complaint was made or suit instituted until months afterwards, when Burros's lips were sealed in death. Under such circumstances, the laches must, of itself, be held fatal, for it would be to assert a doctrine to the last

degree hazardous, to say that a complainant, with full knowledge of all the facts on which he relies, can lie quietly by until death comes to his assistance and puts the seal of perpetual silence upon the lips of his adversary."

In Smith v. Clay, Ambler R. 645, Lord CAMDEN said: "A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands where the party has slept upon his right, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive and does nothing. Laches and neglect are always discountenanced; and, therefore, from the beginning of this jurisdiction, there was always a limitation to suits in this court."

If plaintiffs' claim of an overpayment of $1,050 is true, then the debt was paid in 1884 when they entered into the possession of the premises; yet they occupied the premises for ten years thereafter and if they are correct in their theory, they paid rent at the rate of one hundred dollars a year for ten years for land which of right was theirs, discharged of the mortgage from the moment their possession began. They offer no excuse for not asserting their claim during all that time. They do not come into a court of equity with clean hands, and are not entitled to its aid.

The judgment of the circuit court is reversed. All concur.