## JOE N. ROBY et al., Appellants, v. JACK SMITH et al.

### Division Two, July 14, 1914.

1. **DEED OF TRUST: Sale: Redemption: Laches: One Year and Eleven Months.** Where the cotenant in possession offered to pay off the note secured by a deed of trust on the property, and the legal holder (the defendant) refused to indorse the note to him unless it was to be marked paid, and for that reason the tender was not continued, and about four weeks after the sale to said mortgagee that cotenant surrendered peaceable possession to him, and he proceeded to construct buildings thereon worth three times the value of the property at the time of the sale, and the said mortgagors delayed for one year and eleven months after the sale was made before bringing suit to set the sale aside, and gave him no notice that they claimed the sale was unfair and though aware of the improvements being erected made no objection thereto and asserted no claim to the property, their delay in instituting their suit bars their right to recover.

2. ——: ——: ——: **Inadequacy of Price.** Inadequacy of price is not alone a sufficient ground for setting aside a sale under a deed of trust; and though the property sold for one-fourth its value, and though one of the mortgagors offered to pay the mortgage note before the sale, but the tender was refused because he was not willing to have the note marked paid but wished to have it indorsed to him, yet if the preponderance of the evidence is to the effect that the sale was fairly conducted, and after it was made the property was peaceably surrendered to the mortgagee as purchaser, and he proceeded to make valuable improvements thereon, and the mortgagors, though aware of such facts, made no claim to said property or objections to said improvements, the sale will not be set aside at their suit instituted one year and eleven months after said sale.

Appeal from Greene Circuit Court.—*Hon. Guy D. Kirby*, Judge.

AFFIRMED.

*Oscar B. Elam* for appellants.

.(1) By notifying Joe Roby that he would not accept payment of the note unless Roby would first agree to let the note be marked paid, Smith waived the necessity of and actual tender of the money due on the note. 38 Cyc. 134, 144; Stephens v. Kilpatrick, 166 Mo. 262; Westlake v. St. Louis, 77 Mo. 47; Johnson v. Garlichs, 63 Mo. App. 578; Walsh v. St. Louis Exposition Assn., 101 Mo. 534. (2) After notifying Joe Roby that he would not accept payment of the note unless Roby would first make an agreement with him, Jack Smith had no right to cause the deed of trust on the land to be foreclosed in the absence of an unsuccessful demand upon the heirs or legal representatives of Almeda Weaver for payment of the note, Almeda Weaver being dead. 27 Cyc. 1386. (3) As the heirs-at-law of Almeda Weaver, the Robys had the right to discharge the lien of the deed of trust by payment of the debt secured thereby. 27 Cyc. 1386; Sharp v. Garesche, 90 Mo. App. 233. A tender may be made by anyone having an interest in the consequences of the tender. Kincaid v. School District, 11 Me. 189; 7 Wait's Actions and Defenses, 578; Gould v. Armagost, 46 Neb. 897; Kartright v. Cady, 21 N. Y. 343; McDougald v. Dougherty, 11 Ga. 588. (4) Defendants are not entitled to any consideration on the grounds of being innocent purchasers. They neither plead nor attempt to prove such a defense. Holdsworth v. Shannon, 113 Mo. 524. (5) Where the price bid is clearly inadequate, but not grossly so, where there are other circumstances rendering it inequitable to let the sale stand, the courts have set the sale aside. Hardware Co. v. Brownlee, 186 Mo. 621; Vail v. Jacobs, 62 Mo. 130; Judge v. Booge, 47 Mo. 544; Stoffel v. Schoeder, 62 Mo. 147. (6) Wherever the least fraud or unfairness appears, the court will always unhesitatingly give relief. Clarkson v. Creely, 40 Mo. 114; Barnard v. Duncan, 38 Mo. 170; Powers v. Kneehoff, 21 Mo. 430; Rutherford v.

Williams, 42 Mo. 19; McNew v. Booth, 42 Mo. 192; Grumley v. Webb, 44 Mo. 444; Goode v. Comfort, 39 Mo. 327, 328; Thornton v. Irwin, 43 Mo. 153; Dover v. Kennerly, 38 Mo. 469; Mangold v. Bacon, 229 Mo. 493, dissenting opinion.

*McNatt & McNatt* for respondents.

(1) The evidence of all the witnesses testifying on the point shows that defendant Smith purchased the note from payee Froley and that the same was properly indorsed. But if the indorsement was never put on the note the defendant Smith was the legal holder of said note. Sec. 10019, R. S. 1909. (2) Plaintiff alleged, and must prove, an unconditional tender, and even such tender does not defeat the lien of the deed of trust. Knollenberg v. Nixon, 171 Mo. 445. (3) The court having found that the preponderance of the evidence showed no unfairness in the sale of the land, inadequacy of price alone is not sufficient to set the sale aside. Keith v. Browning, 139 Mo. 190; Harlin v. Nathan, 126 Mo. 97. (4) The plaintiffs, by their laches, waiting until the rights of innocent purchasers intervene, are not entitled to set aside the sale. Ready v. Smith, 170 Mo. 174; Baker v. Cunningham, 162 Mo. 144; Kline v. Vogle, 90 Mo. 247.

BROWN, J.—Action to redeem real estate from sale under a deed of trust. From a judgment for defendants, the plaintiffs prosecute their appeal to this court. This suit was instituted in the circuit court of Lawrence county and transferred, by change of venue, to the circuit court of Greene county.

Almeda Weaver of Aurora, Missouri, owned a home in said city, upon which she placed a deed of trust for $100 on September 26, 1907, to secure a loan of that amount from C. W. Froley. M. T. Davis was made trustee in this deed of trust.

Mrs. Weaver died October 20, 1907, leaving five children, all adults, surviving her. The names and residences of her respective children were as follows: James H. Roby, Oklahoma; Emma Kice, Kansas City, Missouri; S. M. Roby and A. A. Roby, Joplin, Missouri; and Joe N. Roby, who resided with her upon the encumbered property. Mr. Froley sold the $100 note secured by the deed of trust to Jack Smith, principal defendant in this action. On November 2, 1908, defendant Smith caused the deed of trust to be foreclosed and purchased the property at the trustee's sale for $125. The object of this action is to set aside the trustee's sale and the deed made thereunder.

The plaintiffs and A. A. Roby are the legal heirs of Almeda Weaver, deceased. Said A. A. Roby having refused to become a plaintiff, was named as one of the defendants.

The plaintiffs aver in their petition that before the property in controversy was advertised for sale by the trustee (Davis), the plaintiffs tendered to the defendant Smith all the indebtedness secured by the deed of trust, and said defendant refused to accept such tender. That at the sale the trustee accepted defendant's bid of $125 and refused to accept or cry a higher bid made by a solvent party. That the property was worth at the time of the sale $1250 and would rent for $10 per month; that the rental of said property during the time it has been in the defendant's possession is more than sufficient to extinguish the debt for which it was sold. Wherefore, plaintiffs demanded to be permitted to redeem the property, and if a balance was found due defendant Smith after charging him with rents as aforesaid the plaintiffs be adjudged to pay the same. Plaintiffs further prayed "that such orders and judgments and decrees be made in the premises as will adequately protect the rights of all parties in interest, whether specifically asked for here-

in or not, to the end that the very rights of all the parties may be protected.''

The answer of defendant Smith avers that he bought the property in good faith, and that, after his purchase thereof in November, 1908, he made many improvements upon the dwelling house and erected a business house thereon, expending altogether about $2500 in making permanent improvements before he received any knowledge or notice that plaintiffs set up any claim to said premises. Wherefore, he asserted that plaintiffs were, by their delay and laches, estopped from contesting the validity of said trustee's sale or asserting title to said property.

The only plaintiff who testified in the case was S. M. Roby, who stated that three of the heirs of his mother offered to pay off the $100 lien placed upon the land in controversy; that he gave his brother Joe N. Roby a check for $38 to cover his part of the expense of paying said debt. No other details of the alleged tender were given by this witness.

The only other evidence of an offer to redeem comes through the cross-examination of defendant Smith, who testifies as follows:

''Q. Tell the court if anybody at any time offered to pay this note. A. After I got the note, after Mr. Froley sold me the note, I don't remember how long it was afterwards, Roby met me one day, and says, 'I have got the money to pay that note off,' and I says, 'If you will meet me at the People's Bank in about twenty minutes you can pay it off,' and I waited there a few minutes, and he came in and said, 'If I pay that note off, you make it just like you got it from Froley.' I says, 'If you pay it off, I will let the cashier mark it paid,' and I says, 'If you have got the money to pay that note off, you could pay for the groceries you have bought. . . .'

''He said he had the money to pay it off; he said that he would meet me at the bank in fifteen minutes,

and he said he wanted it signed over just like he wanted it, and I told him if he had the money to pay off this note, he could. pay for the groceries that he got several years ago; if he paid it off I wanted the cashier to mark it paid. ·

"Q. That's the only thing that kept you from settling this matter? A. After it was marked paid by the cashier I said I would turn it over to him; he said he wouldn't do it, and he turned and walked out of the bank.

"Q. You refused to accept the money until the cashier marked it paid, did you? that is the only reason that Joe Roby didn't pay that note that day down there at the bank, is because you wouldn't take the money until the cashier marked the note paid? A. I didn't see any money; I told him if he would let the note be marked paid I would turn it over to him.

"Q. Down there at the bank about a month before the sale under the deed of trust, before the note was due, you met Joe Roby? A. I couldn't tell you; I might have met him every day.

"Q. You met him there at the bank for the purpose of making a settlement of this note? A. Yes, sir; met him there for the purpose of paying it off.

"Q. Now, after the note was due, you told Joe Roby you would meet him at the bank, where he could pay that note off? A. Yes, sir.

"Q. After you got down there, you told Joe you wouldn't take the money unless he would first let the cashier mark the note paid? A. That's what I told him. · . . .

· "Q. He told you he wanted you to endorse it just as you had gotten it, and you refused to do it? A. Yes, sir."

Said plaintiff S. M. Roby stated that he knew his brother Joe N. Roby was living in the property when the deed of trust was foreclosed. Heard of the sale about two weeks after it took place; heard that de-

fendant Smith moved into the house three or four weeks after the sale. Said witness further stated that his brother returned the check for $38 about two weeks after it was given. He refused to become a party plaintiff when the suit was first instituted, but did subsequently become a plaintiff in the case.

Defendant Smith further testified that he never heard of any defect in the trustee's sale, nor of any intention on the part of plaintiffs to set up a claim to the property until after he made the improvements hereinbefore mentioned. Said witness also stated that plaintiff Joe N. Roby peacefully turned over to him the keys and possession of the property a few days after the trustee's sale. The evidence tended to show that the property was out of repair when sold by the trustee and worth between five hundred and a thousand dollars.

Evidence concerning the alleged misconduct of the trustee at the sale, and such other facts as are necessary to an understanding of the case, will be noted in connection with our conclusions.

## OPINION.

I. The evidence in regard to the alleged tender of the amount of the debt for which the trustee sold the property establishes the fact that the

**Tender.** plaintiff Joe N. Roby offered to purchase from defendant Smith the note representing the encumbrance on the land. That Smith without declining the amount due him did decline to sell the note or deliver it until it was paid. Whether these facts amounted to a tender we need not decide, because the case breaks upon another issue to be noted in paragraph three of this opinion.

II. Concerning the alleged fact that the trustee refused to cry or consider a bid made at the sale by

C. W. Froley, a solvent party, it was shown that only two bids were made at such sale; the first one was

**Bid.** $100, and the second $125. Witness Froley testified that he attended the sale, intending to buy the property if it did not sell for over $800. That he stood ten feet away from the trustee and bid $200, but the trustee paid no attention to his bid and declared the property sold for $125. Witness Froley does not say that he interposed any objection to the action of the trustee in refusing to consider his bid while the sale was progressing, but states that after the sale was over, and the bidders had dispersed, he went to the bank where Mr. Davis was at work and told him that the sale was unfair. One other witness corroborated Mr. Froley in regard to his alleged bid of $200. Two witnesses testified that Mr. Froley was not present at the time the sale was advertised to take place and the trustee telephoned for him to come to the sale, which he did, but made no bid. Mr. Davis, the trustee, testified, denying that Froley made a bid or made the statement to him about the sale being unfair. Five other witnesses who attended the sale, one of whom was acting as attorney for the Roby heirs, stated that no bid was made by Mr. Froley. On the foregoing evidence we hold that the charge that the trustee refused to consider all the bids made at the sale was not proven by a preponderance of the evidence.

III. We come now to the alleged laches of plaintiffs in delaying the institution of their suit, and in failing to promptly assert title to the property. The

**Laches.** trustee's sale took place November 8, 1908, and this action was instituted on October 17, 1910, one year and eleven months after the sale. The defendant Smith testified that he spent almost $2500 on the property in the form of permanent improvements before he was notified of the plaintiffs'

claim.    The making of the improvements was also proven by other testimony.    There was no evidence of any hidden defects in the sale, nor of any secret fraud on the part of defendant Smith.    All of his acts were open and known to plaintiffs.

S. M. Roby, the only plaintiff who testified, knew of the sale, and that defendant had entered into possession within four weeks after the sale occurred, yet he does not claim to have notified defendant that he was dissatisfied with the sale.    In fact he declined to become a party plaintiff until other heirs had instituted the suit.    Joe N. Roby who was in possession of the property, presumably as the agent of his co-plaintiffs, gave up his possession without a protest.    This act would naturally lead defendant to believe that the validity of the sale would not be contested.

In his answer, as well as in his testimony, defendant Smith states that, during the time he was making improvements on the property, plaintiffs did not assert any claim thereto.    With this answer on file plaintiffs did not offer one word of evidence tending to prove that while defendant Smith was making the improvements (which at least trebled the value of the property in controversy) they gave him any kind of notice of their claim; neither have they proven that they were unaware of the fact that such improvements were being made.    Upon this showing was the circuit court's judgment for defendants erroneous?    The right to maintain a suit in equity is not always governed by the Statutes of Limitation.    The right of a party seeking to set aside a sale which is not void, but merely voidable, is often barred by a lapse of time far less than the period prescribed by the statute.    This for the reason that equity favors the diligent and will turn a cold face upon those who sleep upon their rights for an unreasonable period, during which time the party in possession is making permanent improvements.    [Landrum v. Union Bank, 63 Mo. 48; Bucher

v. Hohl, 199 Mo. 320, l. c. 330; Rutter v. Carothers, 223 Mo. 631, l. c. 640; Ready v. Smith, 170 Mo. 163; Baker v. Cunningham, 162 Mo. 134.]

In the case of Ready v. Smith, 170 Mo. 163, a recovery was denied in a suit to set aside a trustee's sale where the action was delayed only a year and ten months, during which time the property had been sold to a third party. It is true that the facts in Ready v. Smith, supra, are not the same as in the case at bar, but the facts in equity cases are nearly always different in some particular. However, when all the facts in the present case are considered, the delay of the plaintiffs for a year and eleven months to institute their suit, or otherwise assert title, during which time the expenditures made in good faith by defendant Smith more than trebled the value of the property in dispute, fully warrant the judgment for defendants.

IV. Plaintiffs also assert in their brief that defendant Smith instituted a suit for the purpose of clouding the title and deterring bidders **Suit to Cloud Title.** at the trustee's sale. But this contention is outside the pleadings and not sustained by the evidence. We will not encumber the opinion with a further discussion of it.

V. It is to be regretted that the property in controversy brought at most not more than one-fourth of its value at the trustee's sale, but such **Consideration.** things frequently happen, and will continue to happen as long as people encumber property for debts which they do not or cannot pay. By the great preponderance of evidence before us we find that the sale was conducted fairly and that the judgment should be affirmed. It is so ordered.

*Walker, P. J.,* and *Faris, J.,* concur.