SAMUEL HOFFMAN v. B. B. BIGHAM ET AL., Appellants.—24 S. W. (2d) 125.

Division One, February 3, 1930.

518

*Horace Merritt* for appellants.

*John C. Landis, Jr.,* and *Byron Spencer* for respondent.

ELLISON, C.—This is a suit to quiet the title to a parcel of land in St. Joseph, filed December 15, 1925. The judgment of the Buchanan County Circuit Court was for the plaintiff, and the defendants Bigham and Wachter have appealed. The other defendant, Stone, is not an appellant.

The common source of title is Byron Spencer. On June 1, 1921, he deeded the real estate in controversy to John C. and Marie Davis, taking back a purchase-money deed of trust securing the payment of a note for $6,000. Both these instruments were recorded July

2, 1921. About two weeks later, on July 15th, the Davises conveyed the property to R. G. Maxwell. This Maxwell deed was withheld from record nearly seventeen months, until December 4, 1923.

In the meantime, on August 21, 1923, the appellant Bigham brought a suit in the Buchanan County Circuit Court against the two Davises and one R. H. Warrensburg, claiming a half interest in the land; that the remaining half interest belonged to Warrensburg; and that John and Marie Davis were seized of the title merely as trustees for the two. The petition also sought an accounting. A *lis pendens* notice was filed in the Recorder's office the next day, August 22, 1923.

While Bigham's suit was pending, on May 23, 1924, the defendant (therein) R. H. Warrensburg was adjudged a bankrupt and the defendant (herein) Wm. M. Stone was appointed his trustee in bankruptcy. On July 11, 1924, R. G. Maxwell, who had received a deed from the Davises in 1921 as above recited, quit-claimed to Stone, the trustee in bankruptcy, and the latter was brought into Bigham's suit as a defendant. At any rate, he appeared and filed exceptions to the report of the referee therein. On October 2, 1924, the circuit court entered a final decree in the cause divesting title out of John C. and Marie Davis and vesting it in Bigham and Warrensburg, giving each an undivided half interest, "subject to all legal liens and encumbrances existing against the same." Bigham was further awarded a money judgment against Warrensburg for $4500. An execution was presently issued to Bigham under which Warrensburg's half interest in the real estate was sold by the sheriff to the appellant Wachter, who is Bigham's daughter, on November 28, 1924. Thus, through the decree in the Bigham suit and the execution sale, the appellants Bigham and Wachter claim to be the owners of the real estate.

The mortgagee, Byron Spencer, was not made a party to the Bigham suit and the court did not assume to adjudicate his interest in any way. During the pendency of the suit he caused his purchase-money mortgage, or deed of trust, to be foreclosed under the power of sale therein contained, for default in the payment of interest and taxes. The sale took place at the east front door of the court house in St. Joseph on June 25, 1924, and he, Byron Spencer, the mortgagee, bid in the property for $3050 and received a trustee's deed which was recorded August 13, 1924, nearly two months before the final decree was rendered in Bigham's case on October 2, as above recited. Spencer and his wife thereafter conveyed the property by general warranty deed to the plaintiff-respondent Hoffman, dated November 19, 1924, and recorded November 18, 1924, about ten days before the appellant Wachter bought in at the execu-

tion sale on November 28th. The respondent Hoffman claims title through this Spencer deed.

The petition is a conventional skeleton form, alleging the plaintiff to be the owner of the land, that the defendants claim some interest therein, and praying that they be divested of any such right, title or interest and that the title be vested in the plaintiff. The defendant Stone filed answer alleging his discharge as trustee in bankruptcy and disclaiming any interest in the property. The defendants Bigham and Wachter answered separately, the former claiming title to a one-half interest through the Bigham decree and the latter a half interest through the execution sale thereon. Thereafter the Bighams amended their answer by asking for an accounting of rents collected since July 1, 1924 (which was about the time Spencer bid in the property at the foreclosure sale), and praying for affirmative and general relief.

At this stage of the proceedings Byron Spencer, the common source of title, filed an intervening petition, setting out that by reason of the covenants of warranty in his deed to the respondent Hoffman, he was obligated to defend Hoffman's title. Then follows a lengthy recital to the effect that when he (Spencer) sold the property in controversy to John C. and Marie Davis in 1921, along with other real estate, the appellant Bigham undertook to act as his real estate agent for a commission, and was duty bound to represent his interests fairly, but instead, secretly became the purchaser of a part interest in the land through the Davises and fraudulently induced him (Spencer) to accept an inadequate price. The petition prays the court to adjudge the title in Hoffman, but if the defendants be found to have any interest therein, that they be required to pay the $6,000 principal of his purchase money mortgage with interest, back taxes, etc.; and that Bigham be required to refund the $500 real estate commission he had received, and also to pay the sum of $2,000 representing the amount in which Spencer alleged he had been cheated in the sale of the disputed land and the other properties to the two Davises.

Shortly thereafter the plaintiff (respondent) Hoffman filed a reply to the amended answer of the appellants Bigham charging Bigham's fraud as a real estate agent in the sale of Spencer's properties (much as Spencer had done in his intervening petition) and also affirmatively pleading the details of his (Hoffman's) chain of title, particularly the foreclosure proceedings under Spencer's purchase-money deed of trust, on faith of which he avers he purchased. As to these the reply states the foreclosure notice was duly published for twenty days from June 4 to June 25 in the Stock Yards Daily Journal. It is further alleged that the decree in Bigham's suit was not binding on him (Hoffman) because Spencer, his predecessor in title who

owned the land when the decree was rendered, was not made a party to the suit. The reply prays that the plaintiff be adjudged the owner of the fee title and that the defendants be decreed to have no interest therein. A reply substantially similar was filed to the answer of the appellant Wachter.

The defendants Bigham and Wachter filed a demurrer to the intervening petition of Byron Spencer. While the demurrer was pending the plaintiff Hoffman filed his replies to their answers, which we have summarized in the last paragraph. Spencer thereupon withdrew his intervening petition before the demurrer had been determined. The defendants then moved to strike out Hoffman's reply to Bigham's answer on the ground that it attempted to plead a cause of action not alleged in the petition, and that the matter set up could be made available only by amending the petition. The court overruled the motion. They then filed a rejoinder to the reply, which the court struck out.

Next, the contesting defendants filed a second amended answer to the petition, setting out at some length the proceedings in Bigham's suit against the Davises and Warrensburg and the execution sale, and charging that because of the *lis pendens* notice the plaintiff Hoffman was bound by the decree in that case. The answer further denied Bigham represented Spencer in the sale of the property to John C. and Marie Davis and pleaded defendants' foreclosure of his purchase-money, deed of trust was made to embarrass him (Bigham) in his suit against the Davises and Warrensburg, and that it was illegal because the advertisement of the sale was published only nineteen days instead of twenty, as required by statute. By their answer the defendants then offered to redeem the property and to pay the amount due on the deed of trust, and asked an accounting of the rents and profits.

When the trial came on counsel for the defendant-appellants objected to the withdrawal of Spencer's intervening petition, saying: "Defendants object further to the withdrawal of the intervening petition by Byron Spencer. He is in court and we don't want him to get out of court." The objection was overruled, but following that Spencer refiled his intervening petition, and the defendants' lengthy answer to the plaintiff's petition theretofore filed was by agreement in open court considered an answer to the intervening petition as well.

At the trial the respondent Hoffman introduced in evidence without objection the conveyances in his chain of title, including the trustee's deed under Spencer's purchase-money deed of trust, the instrument being duly acknowledged the day of the sale, June 25, 1924, filed for record August 13, 1924, and recorded in book 570, page 229, office of the Recorder of Deeds of Buchanan County. The

trust deed provided any advertisement of foreclosure should be published for twenty days. The trustee's deed declared this had been done, the recital being in the following form:

". . . having previously given twenty days' notice of the time, terms and place of sale, and of the property to be sold, by advertisement printed and published in the Stock Yard's Daily Journal newspaper printed and published in the City of St. Joseph, County of Buchanan and State of Missouri, the last insertion of said advertisement being not more than one week prior to the day of said sale, a copy of which advertisement, with the affidavit of the publisher of said newspaper, proven its publication, is hereto attached and made a part hereof, . . ."

The publisher's affidavit attached to and referred to in the trustee's deed, and recorded as a part of it, was as follows:

"P. R. Manifold being duly sworn on his oath that he is publisher of the Stock Yards Daily Journal, a newspaper published in the City of St. Joseph, in the State of Missouri, and that the advertisement of Trustee's Sale in John C. and Marie Davis, of which a copy is hereto annexed was published in said paper for Twenty (20) days from the 4th day of June, 1924 to the 25th day of June, 1924, inclusive.

"P. R. MANIFOLD, Publisher."

(Subscribed and sworn to before Glen E. Brumbaugh, Notary Public, August 13, 1924.)

The only evidence introduced by the defendants relating to the publication of the notice of foreclosure under the respondent's purchase-money deed of trust, was the following. On cross-examination the appellant Bigham was asked:

"Q. You knew all about the advertisement of the property? A. No, sir—what I tried to find out but couldn't. Q. Never heard of it? A. No."

And on redirect examination:

"Q. Are you acquainted with and do you sometimes see the Stock Yards Journal? A. No, I can't remember when I ever saw it.

"Q. You know such a paper to be published and that it is a daily paper? A. I think so; I couldn't swear to it.

"Q. Do you know whether it is issued on Sundays—do you know that it is a daily paper? A. I think it is. I wouldn't swear to it.

"MR. MERRITT: I think that is all, only I want to get that record from the bankrupt court, and I want to show that the Stock Yards Journal is a daily paper but not published on Sundays."

At the conclusion of the testimony of this witness, and long after the trustee's deed and affidavit of publication of foreclosure notice

had been admitted in evidence without objection, counsel for appellants made and the court overruled the following objection:

"MR. MERRITT: I want to object to the trustee's deed offered in evidence by Mr. Landis, dated June 30 [should be 25] 1921, for the reason that the proof of publication appearing in said deed is not the proper proof in that it fails to set [out] the days and dates on which said advertisement appeared in the Stock Yards Journal but states the conclusion of the plaintiff who verified it that it was published for twenty days."

There are many pages of evidence in the abstract bearing on other matters—chiefly, the conduct of the appellant Bigham when he negotiated a sale of the property from Spencer to John C. and Marie Davis in 1921, and the facts shown during the trial of Bigham's suit filed in 1923. The appellant Bigham did say further, however, that he was unaware the interest on the $6,000-purchase-money-mortgage note and the taxes on the property were delinquent, that Spencer never asked him to pay either, and that Spencer told him he had sold the notes. He said also that Spencer's attitude toward him in his litigation with the Davises and Warrensburg was unfriendly. But in the view we take of the case it will be unnecessary to refer further to all this.

The decree merely adjudged the plaintiff to be the owner of the land in fee simple and divested any right, title, interest or estate which the defendants might have or claim to have. Nothing at all is decided or mentioned concerning the defendant's claim to a right of redemption, or for an accounting of rents and profits, except as those claims are denied by implication, by decreeing the whole title in the respondent Hoffman.

I. Spencer's purchase-money deed of trust was a first lien. The title he acquired at the foreclosure sale thereunder and later passed  on to the respondent Hoffman was in fee simple, unless: (1) publication of the foreclosure notice was defective; (2) and the appellants for that reason have and can assert in this action a right of redemption; (3) or, unless Hoffman's title was in some way detrimentally affected by the decree in Bigham's suit. We shall take up these questions in order.

The pleaded complaint against the foreclosure is that the sale was advertised only nineteen days instead of twenty. As gleaned from the questions propounded by appellants' counsel, his statement to the court and his belated objection to the trustee's deed, their theory appears to have been that the Stock Yards Daily Journal was not issued on Sunday and that with Sundays omitted the notice was published only nineteen times. But they did not prove the paper was not published on Sundays or when it was published. We know

that from June 4 to June 25, inclusive, the dates specified in the publisher's affidavit, was twenty-two days. We can also take judicial notice of the fact that June 4 and June 25, 1924, were Wednesdays and that between the two dates three Sundays intervened. But we cannot presume the paper was issued on Sundays from the fact that the word "daily" was a part of its name (Fox v. Wright, 152 Cal. 59, 91 Pac. 1005, 1006); and much less can we say judicially it was not issued on Sunday. There was a total failure of proof on this issue.

However, the fact that appellants failed in their evidentiary attack on the foreclosure proceedings, does not as a matter of law dispose of the whole case. In a suit to quiet title the burden is on the plaintiff to prove his is the better of two contesting titles (Jackson v. Ward (Mo.), 292 S. W. 7); and even though the claim of the defendant fail, yet the plaintiff's right to the relief he seeks must be measured by the strength of the proof he offers. [Sanders v. Johnson (Mo.), 287 S. W. 427.] Respondent contends in his brief that the evidence shows the foreclosure sale was regular, but in our opinion the proof was insufficient and did not warrant or support the decree adjudging the fee simple title to be in him. It failed to show the foreclosure notice was published, as required by law—and this even though the Stock Yards Daily Journal was issued on Sundays.

Section 2235, Revised Statutes 1919, provides that in all sales of real estate under a power of sale contained in any mortgage or deed of trust "not less than twenty days' notice of such sale shall be given." Section 2236 requires that such notice "shall be given by advertisement inserted *for at least twenty times, and continued to the day of sale,* in some daily newspaper in counties having cities of forty thousand inhabitants or more." (Italics ours.) We take judicial notice that Buchanan County contains a city of more than 40,000 inhabitants—St. Joseph—and therefore comes within the above designation of the statute.

Twenty days' notice, as required by Section 2235, means twenty days not counting the date of the first publication but including the day of sale, or, counting the date of first publication but omitting the day of sale. [Sec. 7058 (4), R. S. 1919; Gray v. Worst, 129 Mo. 122, 130, 31 S. W. 585, 587.] This statute standing alone, however, does not require twenty days' continuous daily or weekly publication. It would be satisfied by one insertion of the notice at least twenty days before the sale day. [Southworth v. Mayor of Glasgow, 232 Mo. 108, 115, 132 S. W. 1168, 1170.] The first publication of the notice in this case was on June 4, twenty-one days before the sale day. So it cannot be said the publication offends this statute.

But Section 2236 provides the notice must be inserted in a daily newspaper at least twenty times and continue to the day of sale. This clearly means the advertisement must run for a minimum of twenty consecutive publication days next preceding the sale. An insertion on the day of sale cannot be counted. If the notice were appearing in an afternoon paper it would ordinarily come out after the sale is over, leaving only nineteen days actual notice. One case says as a matter of prudence and to avoid mistakes the notice should appear in every issue up to and including the day of sale (German Bank v. Stumpf, 73 Mo. 311, 315); and that is doubtless true when the advertisement is printed in a morning paper and will serve as a last minute reminder. But that decision was written before the statute was enacted (Laws 1885, p. 209). The statutory requirement is that the notice be "continued to" the day of sale. "To" is primarily a word of exclusion (3 Bouviers Law Dictionary (3 Ed.) p. 3283; 8 Words & Phrases, p. 7816; 4 Id. (2 Ser.) p. 929; 7 Id. (3 Ser.) p. 507); and considering its context and the purpose of the notice must be taken to mean until or up to.

The trustee's deed introduced by the respondent was prima-facie evidence of the truth of its pertinent recitals. [Sec. 2253, R. S. 1919.] But the deed proper did not show a compliance with the statute. It said twenty days' notice of the sale had been given by advertisement in the Stock Yards Daily Journal, the last insertion being *not more than one week prior* to the day of sale. This obviously did not show compliance with the statutory requirement that the notice be continued to the day of sale. The recital may have come about through the use of a deed form adapted to reporting advertisements in weekly papers (see the statute), but whatever the reason, it does not show due publication.

But the trustee's deed went further, and expressly made the notice and publisher's affidavit a part thereof. The affidavit says the advertisement was published "for Twenty (20) days from the 4th day of June, 1924 to the 25th day of June, 1924, inclusive." According to our view this, again, does not measure up to the statute, even though we grant the language implies the advertisement was inserted twenty times.

If the affidavit means the notice was published twenty times beginning June 4 and ending on June 25, as seems most likely, the law is not satisfied because June 25 was the day of sale, and if there were only twenty publications counting one on the sale day there could have been only nineteen before that day, which as we have seen is not enough. On the other hand if the meaning is that there were twenty insertions during the twenty-two day period beginning June 4 and ending June 25, it is impossible to tell on what days the publications did appear. One of them might still have been the sale

day—otherwise, why include it—and there is nothing to show whether the publications were continued to the day of sale. We do not see how, with fidelity to the text, the affidavit can be construed to read "for at least twenty times on consecutive publication days from June 4 to but not including June 25."

II. Since the foreclosure sale was not advertised as required by law, on the respondent's own showing, it follows the title he acquired from Spencer, the purchaser at that sale, was only the legal title subject to the right of the appellants Bigham and Wachter, as owners of the equity of redemption, to redeem the property by paying the amount due under the deed of trust and note secured. That is the actual condition of the title (Wolff v. Ward, supra, 104 Mo. l. c. 149, 16 S. W. l. c. 166; Adams v. Carpenter, 187 Mo. 613, 634, 86 S. W. 445, 451; Feller v. Lee, 225 Mo. 319, 330, 124 S. W. 1129, 1132); and since the defect appeared on the face of the trustee's deed the respondent is charged with notice thereof. [Rideout v. Burkhardt, 255 Mo. 116, 164 S. W. 506.]

The respondent urges several other reasons why the appellants should not be allowed to redeem. One is that they did not act within a reasonable time after the sale and are guilty of laches. Another is that they do not come into court with clean hands. Considering the circumstances of the case, we do not see how the appellants can be convicted of laches. Until a decree was rendered in Bigham's suit on October 2, 1924, he had not established his interest as a part owner of the equity of redemption and was in no position to redeem. The appellant Wachter did not acquire her interest until November 29, 1924. The instant suit was started December 15, 1925, a little more than a year later. Respondent quotes from 19 R. C. L. 653, sec. 470, and cites Roby v. Smith, 261 Mo. 192, 199, 168 S. W. 965, 967; Ready v. Smith, 170 Mo. 163, 174, 70 S. W. 484, 486, and Baker v. Cunningham, 162 Mo. 134, 144, 62 S. W. 445, 447. In the first of these cases suit was filed one year and eleven months after the foreclosure; in the second case one year and ten months, and in the third two years. In the instant case the time elapsed between the foreclosure and the bringing of the suit was substantially one year and six months, but the interval after the appellants acquired title was only thirteen or fourteen months.

We have carefully considered the evidence in connection with the foregoing authorities and do not find any facts indicating the respondent or Spencer were misled by the appellants' failure to bring the suit sooner than they did. It is alleged in the respondent's reply that improvements were made on the property during the interval, but we find no evidence to that effect in the record. Neither

is there anything indicating the appellants abandoned their claim to redemption or appeared to have done so. On the contrary Bigham continued the prosecution of his suit against Davis and Warrensburg after the foreclosure. If the foreclosure sale had been valid the appellants would have had a year within which to redeem under Sections 2222, 2223, Revised Statutes 1919. Since the sale did not comply with the statute the matter is to be governed by equitable considerations and we think the equities require that the appellants be given an opportunity to redeem. The facts in the Missouri cases cited by respondent are far different from those in the instant suit.

The next point made is that the appellants did not come into equity with clean hands. This is urged on the theory that Bigham was guilty of breach of trust in assuming to act as real estate agent for Spencer in the sale of the property to Davis and at the same time being secretly interested in the purchase thereof. The cases cited are Rowley v. Rowley (Mo.), 197 S. W. 152; Houtz v. Hellman, 228 Mo. 655, 128 S. W. 1001; Carson v. Woods (Mo.), 177 S. W. 623, and Creamer v. Bivert, 214 Mo. 473, 113 S. W. 1118. Part of these are specific performance cases, and the others are actions in which the moving party sought the aid of a court of equity to avoid the consequences of his own fraud or to reap benefit therefrom. Of course that cannot be done. But in this case Spencer and the respondent Hoffman have ratified the sale made by Spencer to Davis as trustee or straw man for Bigham and Warrensburg. They recognize the purchase-money deed of trust as legal and contend the foreclosure sale thereunder is binding so far as their side of the transaction is concerned. But when it comes to Bigham's claiming the right to redeem under that same deed of trust they say he cannot do so because of his fraud in the procurement of the initial conveyance. This will not do. We do not mean to say that Spencer could not ratify the sale and still sue Bigham for damages, but we do say that since he recognized the chain of title as legal and binding, he cannot deny Bigham's right to redeem.

III. The appellants make some slight contention that they are the owners in fee simple of the property and that Spencer and Hoffman were cut out by the decree in Bigham's suit although not parties thereto. Their theory seems to be this: that Hoffman and Spencer claim through the deed of trust given by John C. and Marie Davis, which was foreclosed while the Bigham suit was pending and after a *lis pendens* notice had been filed. The decree divested title out of the Davises. Therefore, say appellants, it stands adjudged the Davises had no title to mortgage and Spencer got nothing by his purchase at the foreclosure sale. But this is wholly wrong. Bigham did not claim title

adverse to Spencer's deed of trust in his suit and the decree did not attack it, but expressly vested title in Bigham and Warrensburg subject to existing incumbrances. The Davises had given this purchasemoney deed of trust over two years before the suit was filed as agents or trustees for Bigham and Warrensburg, and all the evidence shows it was the consideration for and basis of the title they got through the Davises. Plainly they are estopped to dispute it; and the decree did not strike at it anyhow.

IV. From what has been decided in the preceding paragraphs it follows the case must be reversed and remanded in order that the appellants may be given an opportunity to exercise their right of redemption. We cannot determine from the present record the amount which they should be required to pay. In fact, the trial court did not go into that branch of the case at all in formulating its conclusion.

Since the case is to go back for retrial it will be unnecessary to consider many of the appellants' assignments which are directed at procedural errors. These will disappear if and when the cause is tried again. But there are one or two matters that must be covered. The appellants complain because the court permitted Spencer to file an intervening petition, withdraw it and later refile it. We cannot understand how they can consider themselves aggrieved by this. When Spencer withdrew his intervening petition they objected and declared they wanted to keep him in court. Then Spencer refiled his intervening petition and they agreed that their amended answer to the plaintiff's petition should be treated as an answer to the intervening petition. Certainly if there was error in allowing Spencer to intervene in the case all this waived it.

But many issues are raised by the intervening petition and answer which cannot be tried in this case. The appellants ask an accounting of rents and profits from July 1, 1924, this going back practically to the date of the foreclosure sale, which occurred on June 25, 1924. Appellants have cited no authorities which justify them in seeking such relief. When Spencer purchased at the foreclosure sale he acquired the legal title which carried with it the right to possession, and he could have maintained ejectment. [Feller v. Lee, supra, 225 Mo. l. c. 330, 124 S. W. l. c. 1132.] The sale was only voidable, not void, and until appellants elected to redeem and offered to do so by bringing this suit they had no claim to the rents and profits from the property.

530

Neither can the intervener Spencer as a covenantor and warrantor in the chain of title set up a counterclaim or cross-action against Bigham for the return of the $500 real estate commission and for damages for the depreciated price at which he was tricked into selling the property, according to his contention. These are personal claims of his.

The case started out as a quiet-title suit. The defendants filed an answer claiming the right of redemption. Spencer filed an intervening petition asserting he was bound by the covenants of warranty in his deed to the respondent Hoffman and therefore entitled to come in to the case as a party. But we cannot see why, under this guise, he should be permitted to engraft another lawsuit onto the controversy having for its object the recovery of a money judgment for damages. The fact that appellants in effect consented to the filing of the intervening petition by protesting when it was withdrawn, and by answering thereto and joining issue on the merits after it was refiled, is no warrant for trying two separate cases in one, though it be an equity suit. [21 C. J. sec. 127, p. 148.] Whether or not Spencer is entitled to damages from Bigham is a question in no wise related to the main issue, which is whether the respondent Hoffman has the fee simple title, or whether he has simply the legal title with a right of redemption still vested in the appellants.

For the reasons given the judgment and decree are reversed and the cause remanded for further proceedings not inconsistent herewith. *Lindsay* and *Seddon, CC.,* concur.

PER CURIAM:—The foregoing opinion by Ellison, C., is adopted as the opinion of the court. All of the judges concur.